Timothy A. La Sota (Arizona SBN 020539)
**TIMOTHY A. LA SOTA, PLC**
2198 East Camelback Road, Suite 305
Phoenix, Arizona 85016
Telephone: (602) 515-2649
Email: tim@timlasota.com
*Attorney for Plaintiff Allen Skillicorn*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allen Skillicorn,<br><br>Plaintiff,<br><br>v.<br><br>Ginny Dickey, an individual,  Brenda J. Kalivianakis, an individual, Sharron Grzybowski, an individual, Peggy McMahon, an individual, Tina Vannucci, an individual, Town of Fountain Hills, an Arizona municipal corporation,<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff ALLEN SKILLICORN ("Plaintiff") submit this Complaint against Defendants TOWN OF FOUNTAIN HILLS as follows.

## PRELIMINARY STATEMENT

This case involves an assault on the constitutional rights of Allen Skillicorn, a Fountain Hills Town Councilmember.  To wit, his rights to free speech, his right to petition government officials for a redress of grievances, and his due process rights have all been violated.

Those individuals responsible for these grievous violations of Councilman Skillicorn's rights are Ginny Dickey, the Mayor of Fountain Hills, Fountain Hills

1

Councilmembers Brenda J. Kalivianakis, Sharon Grzybowski, Peggy McMahon, as well as Tina Vannucci, the attorney secured by the Town who determined, after a sham investigation, that Councilman Skillicorn had committed "ethics" violations for simply exercising his constitutional rights.

Ms. Vannucci issued a formal report finding that Councilman Skillicorn had committed ethics violations on two separate occassions.  One was Councilman Skillicorn asking appropriate questions and making appropriate comments during a Town Council meeting as a Town Councilmember.  The second involved an instance in which a Town employee confiscated a political sign of Councilman Skillicorn's that advocated against a Town bond measure.  Councilman Skillicorn simply wanted to know why his political sign had been removed.  Councilman Skillicorn acted appropriately in that instance too, and in fact it was he who was subject to aggressive behavior from the Town employee.

Because of the exercise of constitutional rights, Councilman Skillicorn has been subjected to severe, and illegal sanctions from the Town Council, to wit:

1. Councilman Skillicorn cannot be elected Vice Mayor;

2. The Town will not pay for any travel for Councilman Skillicorn for travel related to his official duties,

3. Mr. Skillicorn has been barred from interacting with Town employees unless another individual is present, and

4. the Town Council is badgering Councilman Skillicorn to "apologize" to the Town employee at issue, compelled speech that Councilman Skillicorn refuses to engage in.  His refusal will undoubtedly lead to attempts to impose additional sanctions.

And those who would love to use the full resources of the Fountain Hills municipal government to shut Councilman Skillicorn up are emboldened by these actions. Councilman Skillicorn is facing yet another ethics complaint for email communications and social media posts he has put out to his constituents, as well as a radio interview. It now seems that it is "unethical" and subjects one to government discipline in Fountain Hills if one speaks one's mind about one's political adversaries and detractors. And the Town has once again hired Ms. Vannucci, the same person who already violated Councilman Skillicorn's rights, to supposedly conduct an "investigation."

Ms. Vannucci is now badgering Councilman Skillicorn to set aside time to "discuss" the ethics complaint and his free speech with Ms. Vannucci, that is, answer to the government for protected speech. This should never happen in America, and Councilman Skillicorn's seeks this Court's intervention to put a stop to it.

Councilman Skillicorn has been significantly hampered in his official duties as a punishment for the exercise of constitutional rights that four members of the Town Council disliked. If every time a government official found speech distasteful that speech could be squelched, there would be no such thing as free speech. Councilman Skillicorn's rights continue to be under fire with the continuing restrictions on his right to speak freely to Town employees, his right to interact with constituents, and his right to be free from government compelled speech in the form of an apology he does not owe and will not give. It is clear that the Town Defendants are trying to intimidate Councilman Skillicorn into not saying anything critical of the Mayor and Councilmembers he disagrees with.

Mr. Skillicorn seeks both preliminary and permanent injunctive relief to vindicate the constitutional rights that he has been deprived of, and monetary damages against the

individual person defendants.   These violations occurred with regard to constitutional rights that are clearly established and should be apparent to anyone.  As such, the individual person Defendants are personally liable.

## **PARTIES**

1.      Plaintiff ALLEN SKILLICORN is a resident of the Town of Fountain Hills, Arizona and a duly elected Councilmember of the Town of Fountain Hills.

2.      Defendant GINNY DICKEY is the duly elected Mayor of the Town of Fountain Hills.

3.      Defendant BRENDA J. KALIVIANAKIS is a duly elected Councilmember of the Town of Fountain Hills.

4.      Defendant PEGGY McMAHON is a duly elected Councilmember of the Town of Fountain Hills.

5.      Defendant SHARON GRZYBOWSKI is a duly elected Councilmember of the Town of Fountain Hills.

6.      Defendant TINA VANNUCCI is the attorney that the Town Attorney of Fountain Hills retained to determine whether Councilman Skillicorn had violated the Town's ethics code, as alleged in prior complaints and as alleged in an additional pending complaint.  Ms. Vannucci acted under color of law in this role and at all relevant times.

7.      Defendant TOWN OF FOUNTAIN HILLS, ARIZONA is a municipal corporation in the State of Arizona.

**JURISDICTION AND VENUE**

8.     This is an action seeking to redress the violation of Plaintiff's rights to freedom of speech, freedom to petition and communicate with government officials, and Councilman Skillicorn's right to due process and equal protection of the laws under the First and Fourteenth Amendments to the Constitution of the United States.

9.     Plaintiff asserts this action against Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. §§ 1331 and 1343(4).

10.    This Court has personal jurisdiction over Defendants because individual person Defendants reside in Arizona and Defendant Town of Fountain Hills is located in the State of Arizona.

11.   Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. § 1391(B).

**FACTS**

**The original politically motivated, groundless "ethics" complaints against Skillicorn**

12.    In 2023 and 2024, a series of ethics complaints were submitted to the Town of Fountain Hills alleging certain ethics violations by Councilman Skillicorn.  All supposed ethics complaints were groundless, politically motivated, and submitted by political opponents of Councilman Skillicorn.

13.    The Town has an ethics code ("Ethics Code", Exhibit 1) that contains various prohibitions, but the activities prohibited are vague and fail to afford constitutionally required due process by affording reasonable notice as to the actions that are prohibited.

14.     The Ethics Code is facially invalid, and invalid as applied here, as the conduct that the Ethics Code prohibits is constitutionally protected, and the application of the Ethics Code has resulted in a deprivation of Skillicorn's constitutional rights.

15.     Pursuant to the Ethics Code, upon receipt of the original ethics complaints, the Town secured outside counsel to conduct an investigation of the ethics complaints.

16.     The Town hired Tina Vannucci, a private attorney, to conduct the investigation.

17.     Though not a Town employee, Ms. Vannucci acted under color of law in conducting her investigation and engaging in conduct that violated Skillicorn's constitutional rights. 42 U.S.C. § 1983; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**Ms. Vannucci conducts a sham investigation and sustains two of the complaints against Skillicorn**

18.     Ms. Vannucci proceeded to conduct a sham investigation and ultimately sustained two of the ethics complaints against Councilman Skillicorn.

19.     The first ethics complaint against Councilman Skillicorn involved an allegation that Councilman Skillicorn's speech at a January 17, 2024, Town Council meeting violated the Ethics Code.

20.     Pursuant to her official finding sustaining the first ethics complaint, Ms. Vannucci wrote a report to the Town Council.  (Exhibit 2).

21.     In her report, Ms. Vannucci described the conduct on the part of Councilman Skillicorn that amounted to unethical conduct as follows:

> Prior to the [relevant] agenda item, Councilman Skillicorn asks for a point of order to clarify whether the upcoming item on the agenda was legislative or quasi-judicial.  The Town Attorney clarifies that the site-

specific matter is a legislative matter.  Councilman Skillicorn goes on to state that he wants to make sure the hearings are fair and part of his curiosity is whether members of Council have had ex parte communications with the developer or have taken campaign contributions from them and need to recuse themselves.  The Town Attorney clarifies that the Town Council has been provided instructions regarding conflicts of interest and they know how to disclose it and declare a conflict if it exists.

During the discussion of the agenda item, Councilman Skillicorn states that he is concerned or curious about whether any members of council have been lobbied or had ex-parte communications with the developer. The Mayor asks if Councilman Skillicorn has an accusation to make and he responds saying he is just curious and he thinks the public has the right to know about any communications with the developer.  Councilman Skillicorn asks to go down the row of Council members but the Mayor states they are not doing that.  Councilman Skillicorn then asks if she is "going to refuse the public from seeing this" and asks if anyone has taken campaign cash from the developer to which the Mayor responds "oh my gosh."

Councilman Skillicorn than notes they are rushing this through, "process be damned" without answering these types of questions.  Councilman Skillicorn says they are having no transparency here and asks if this is the process they want in this town.

At this point, Council McMahon objects to his "vulgar accusations" and tells him they are inappropriate and he has no proof that she knows of and it is no longer a hearing.  Councilman McMahon again reiterates this is inappropriate and asks him not to continue. Councilman Skillicorn then asks if that is Councilwoman McMahon's way of saying she is against transparency.

The Town Attorney then states he understands Councilman Skillicorn's question and it seems like Councilmember Skillicorn has made his point and it seems like the Council is not going to entertain the discussion and suggests to the Mayor that the Council move on.

Councilman Skillicorn indicated that there were rumors of people talking to developers so he wanted to ask the question.  He noted that he didn't accuse anyone specifically and no one answered.  Councilman Skillicorn also motioned to go into e-session so they could potentially speak about the matter in confidence, but the motion did not receive a second.

(Exhibit 2).

22.     The provisions of the Ethics Code that Ms. Vannucci claimed were violated were as follows:

> Section 8.4.  "[The Council shall] "be dedicated to the highest ideals of honor, ethics, and integrity in all public and personal relationships."
>
> Section 8.4(A).  "The Council shall] conduct [themselves] so as to maintain public confidence in Town government and in the performance of the public trust" and will do the following when serving in their official capacity:
> •  "Engage in constructive conversations and debates that encourage the exchange of ideas while
> avoiding personal attacks or derogatory language.
> •  Refrain from making verbal attacks upon the character or motives of other members of the Council, Boards, Commission, the staff, or the public.
> •  Refrain from making disparaging remarks about other members of the Council, Boards, Commissions, the staff, or the public."
>
> Section 8.6(B).  "[The Council] "shall safeguard public confidence in the integrity of Town government by being honest, fair, caring, and respectful, and by avoiding conduct creating the unexplainable appearance of impropriety, or impropriety of which is otherwise unbefitting a public official."

(Exhibit 2).

23.     Ms. Vannucci's report contained a cursory and highly flawed discussion of First Amendment concerns present in sanctioning a Town Councilmember for remarks made at an official Town Council meeting, but dismissed them in near summary fashion, stating:

> The U.S. Supreme Court addressed First Amendment restrictions on elected officials in *Nevada Commission on Ethics v. Carrigan,* 131 S.Ct. 2343 (2011).  Although the Carrigan case involved the mandatory recusal obligation of a public official, which is not at issue here, the language used by the U.S. Supreme Court is instructive when applying the Code of Ethics to the Town of Fountain Hills.  The Supreme Court observed that "[t]his Court has rejected the notion that the First Amendment confers a right to use government mechanics to convey a message." *Id* at 2351.  In addition, the Supreme Court expressly noted that "a legislator has no right to use official power for expressive purposes." *Id*  The opinion set forth in *Carrigan* appears consistent with the more recent cases in lower courts,

such as *Garnier v. Ratcliff,* 41 F. 4th 1158 (9th Cir. 2022) and *Lindke v. Freed,* 37 F.4th 1199 (6th Cir. 2022), which distinguish the application of the First Amendment protections based on whether a social media account is used in an official capacity or in a personal capacity. Based on *Carrigan,* the Town of Fountain Hills should be allowed to enforce the reasonable time, place and manner restrictions set forth in the Code of Ethics on public speech.

(Exhibit 2).

24.     None of the cases Ms. Vannucci cited provide even a modicum of support for her legal thesis that squelching Councilman Skillicorn's speech simply because they did not like it was a reasonable time place and manner restriction.

25.     In determining whether an action is a reasonable time place and manner restriction, this Court has summed up the issue and the law on that issue as follows:

> [t]he issue is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (citation omitted)). "[A] regulation is generally 'content-neutral' if its restrictions on speech are not based on disagreement" with the substance of the message. *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 326–27 (5th Cir. 2005) (citations and footnote omitted); accord *Kokinda*, 497 U.S. at 730 (regulation of speech activities "for nonpublic for a...must be reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view' " (quoting *Perry*, 460 U.S. at 46)); *DeGrassi v. City of Glendora*, 207 F.3d 636, 645-46 (9th Cir. 2000) (stating that city councils "may confine their meetings to specified subject matter...as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view" (citation and internal quotation marks omitted));

> *Stuart v. City of Scottsdale, et al.*, 2024 WL 1299643, at *15 (D.Ariz. 2024).

26.     The Council's restrictions on Councilman Skillicorn are not reasonable time place and manner restrictions.

27.     Ms. Vannucci's report also failed to discuss legislative or speech and debate privilege at all, and failed to note that the law in the Ninth Circuit is that the legislative privilege to speak freely at a council meeting extends to municipal officeholders: "[i]n order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense…state and local legislators may invoke legislative privilege." *Lee v. City of Los Angeles*, 908 F.3d 1175, 1186–87 (9th Cir. 2018)(*quoting Tenney v. Brandhove*, 341 U.S. 367, 372-373, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)).

28.     Ms. Vannucci's report also failed to mention that under Arizona law, where "statements were made by a town council member at a formal council meeting during the course of that meeting….the statements are protected by an absolute immunity." *Sanchez v. Coxon*, 175 Ariz. 93, 97 (1993).

29.     Ms. Vannucci similarly issued a report sustaining a second ethics complaint against Councilman Skillicorn.

30.     The second complaint stemmed from an interaction between Skillicorn, Town employee Peter Luchese and a Maricopa County Sheriff's Deputy who improperly intervened in a non-criminal interaction on or about September 16, 2023, at approximately 10:30 in the morning.

31.     Councilman Skillicorn opposed passage of the proposed bond measure, and Mayor Dickey supported it.  Councilman Skillicorn placed various signs around the Town urging citizens to vote no on the bond measure.

32.     Councilman Skillicorn witnessed a person remove one of his anti-bond signs.

33.     Councilman Skillicorn realized that this person was driving a Town of Fountain Hills vehicle, and pulled up behind the Town employee's vehicle.

34.     Councilman Skillicorn believed at the time that his sign had been illegally removed, and he attempted to make contact with the Town employee driver of the vehicle.

35.     Councilman Skillicorn did flash his headlights at the driver, but this was in broad daylight in a request that this driver stop so that Councilman Skillicorn could ask this government official what the legal basis of his removal of the sign was.

36.     Councilman Skillicorn followed this Town employee to the Town of Fountain Hills governmental center, where he learned that this employee was Town code enforcement officer named Peter Luchese.  Councilman did not commit any traffic violations, or any other violations of law, in following Mr. Luchese.

37.     Vannucci stated, as part of her report that "I am unable to definitively determine whether any traffic laws were in fact violated…"  (Exhibit 3).

38.     Councilman Skillicorn denied, and continues to deny, breaking any traffic laws as he tried to communicate with Mr. Luchese, and Councilman Skillicorn has never been cited for any traffic violations in connection with this event.

39.     Councilman Skillicorn's actions, in seeking to make contact with Mr. Luchese, is a textbook example of the exercise of free speech and petitioning a government official for a redress of a grievance, to wit, the confiscation of his political sign.

40.     In concluding that Councilman Skillicorn committed an ethics violation, Ms. Vannucci actually admits that Councilman Skillicorn was trying get Mr. Luchese to pull over so he could talk to him: "I do not believe that following [Town employee] Lucchese to Town Hall and flashing headlights at him to try to get him to pull over or to try to talk sets 'a positive example of good citizenship' as required by the Code of Ethics."  (Exhibit 3).

41.     Councilman Skillicorn was understandably unhappy about his political sign being removed, under questionable circumstances, and wanted an explanation. Councilman Skillicorn took this action purely as a private citizen.  A private citizen could not conceivably be punished for a simple exercise of one's right this way.  Nor can a councilmember.  Councilmembers enjoy no fewer rights than anyone else. *DeGrassi*, 207 F.3d at 646.

42.     Ms. Vannucci also stated in her "report" that "[o]nce Councilman Skillicorn realized it was a Town truck he was following, he ***could*** have contacted the Town Manager to determine how to retrieve the sign and for an explanation of why it was removed."  Exhibit 3 (Emphasis added).

43.     The government is not permitted to dictate the manner in which a citizen decides to approach a government employee and may impose no malleable "politeness" or "civility" requirement, or dictate which government officials an American is permitted to approach to exercise free speech rights or seek a redress of grievances.

44.     When "[a]n intent to convey a particularized message [is] present, and in the surrounding circumstances the likelihood [is] great that the message would be understood by those who viewed it," it is protected speech. *Spence v. State of Wash.*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).

45.     Even where a Court has assumed that a person flashed his or her headlights to warn other motorists of an upcoming speed trap, the Court has found that action to be protected speech under the First Amendment.  *Elli v. City of Ellisville, Mo.*, 997 F.Supp.2d 980, 984 (E.D.Mo. 2014).

46.     In seeking to make contact with a government official regarding the removal of a political communication sign, Councilman Skillicorn did nothing illegal and his actions are protected by his right to petition and his right to free speech under the First Amendment.

## The matter moves to the Town Council

47.    The Ethics Code contains no provision allowing the Council not to sustain the findings of the outside counsel hired to investigate, and make a determination, as to whether an Ethics Code violation has occurred.

48.    Pursuant to the Town Code, once a finding of an ethics violation is made, it is up to the Council to decide what sanction, if any to impose.

49.    After Ms. Vannucci issued her report, this matter was scheduled for a Council meeting on March 5, 2024, before being rescheduled to March 19, 2024.

50.    Town Attorney Aaron Arnson opined that Skillicorn had a conflict of interest such that he could not participate in the vote on what sanctions, if any to impose.  (Exhibit 4).

51.    Councilman Skillicorn's attorney sent the Town a letter outlining the obvious violations of the United States Constitution that had resulted by the Town's investigation and the additional violations that would occur if any discipline were attempted to be imposed by the Town Council.  (Exhibit 5).

52.    On March 19, 2024, by a 4 to 2 vote, with Councilman Skillicorn abstaining, the Defendant Town Councilmembers voted to purport to impose the following sanctions on Skillicorn:

A.  Councilman Skillicorn could not be elected Vice Mayor.

B.  Councilman Skillicorn is not permitted to interact with Town staff members unless another person is present.

C.  Councilman Skillicorn was required to apologize to Town employee Peter Luchese.

D.  Councilman Skillicorn could not be reimbursed for expenses for travel that he undertook as part of his official Town duties.

### Continuing Fallout, and New Ethics Complaints Targeting Councilman Skillicorn's First Amendment Rights Emerge

53.     The Defendant Councilmembers have begun a campaign of harassment, attempting to badger Councilman Skillicorn into apologizing to Town employee Peter Luchese, compelled speech that in itself violates the First Amendment.  *Janus v. American Federation of State, Cnty., and Mun. Employees, Council 31*, 138 S.Ct. 2448, 2463, 585 U.S. 878, 891–92 (2018)("We have held time and again that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all")(quotations omitted).

54.     To wit, on March 30, 2024, Councilwoman McMahon sent Councilman Skillicorn an email stating: "Please provide me with a copy of your letter of apology to Mr. Peter Luchese, Code Enforcement Officer."  (Exhibit 6).

55.     Councilman Skillicorn owes no apology to Mr. Luchese, he will not be apologizing to Mr. Luchese, and the Town will likely attempt to impose additional illegal sanctions on Skillicorn for this refusal.

56.     The Defendant Councilmembers actions have encouraged citizens to file additional ethics complaints seeking to silence Councilman Skillicorn.

57.     The Town's actions in seeking to punish Councilman Skillicorn for First Amendment protected free speech has invited further assaults on Councilman Skillicorn's free speech rights.  On March 29, 2024, Beverly Culp, a political adversary of Councilman Skillicorn's, filed another frivolous, politically motivated ethics complaint against

Skillicorn claiming that he should be subjected to punishment imposed by the Town of Fountain Hills for First Amendment protected free speech, including constituent emails as well as social media posts and a radio interview.  (Exhibit 7).

58.     One of the items that formed the basis for Ms. Culp's complaint is that prior to the Council vote on sanctions, Councilman Skillicorn sent an email to his constituents criticizing certain members of the Town Council and the ethics complaints against him generally and urging citizens to exercise their free speech rights by contacting the Town Council.  (Exhibit 7).

59.     Fountain Hills Town Attorney Aaron Arnson once again referred this matter to Vannucci to "investigate."

60.     On May 3, 2024, Vannucci sent an email to Skillicorn requesting that Skillicorn provide her dates "next week" on which he could "talk about these allegations…" with Vannucci.  (Exhibit 8).

61.     Councilman Skillicorn did not respond with a date in which he would speak to Ms. Vannucci, and Ms. Vannucci has continued to demand that Councilman Skillicorn answer to her, a person acting under color of law, with regard to the exercise of his First Amendment rights in criticizing the initial ethics process that resulted in purported discipline imposed by four members of Town Council.

## COUNT ONE

**Violation of Plaintiff's rights to freedom of speech, freedom to petition and communicate with government officials, and right to due process and equal protection of the laws under the First and Fourteenth Amendments to the Constitution of the United States**

**(All Defendants)**

62.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated here.

63.     The First and Fourteenth Amendments to the United States Constitution protect the rights of all citizens to freedom of speech, freedom to petition and communicate with public officials, and their right to due process and equal protection of the laws.

64.     42 U.S.C. § 1983 provides for a civil cause of action for damages for each citizen for any "deprivation of any rights, privileges, or immunities secured by the Constitution."

65.     The First Amendment to the United States Constitution ensures that "debate on public issues…be uninhibited, robust and wide-open." *New York Times v. Sullivan*, 376 U.S. 254 (1964).

66.     Restrictions on a council member's ability to attend council meetings and address matters of public concern may infringe the member's First Amendment rights. *See Bond v. Floyd,* 385 U.S. 116, 137, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966) (Georgia legislature's disqualification of elected representative on account of statements about the Vietnam war violated representative's right of free expression under First Amendment). As the Court stated in *Bond,* "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.* at 135–36, 87 S.Ct. 339. But "[t]he central commitment of the First Amendment ... is that 'debate on *public* issues should be uninhibited, robust and wide-

open'.... [S]tatements criticizing public policy and the implementation of it must be ... protected." *Id.* at 136, 87 S.Ct. 339 (emphasis added) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

67.     Municipal Council meetings are at least "limited public forums which means the Council may place "reasonable restrictions on the time, place, and manner of speech, in addition to restrictions on speech content, so long as those regulations are viewpoint neutral and enforced in a neutral manner." *Bezis v. City of Livermore*, 848 Fed.Appx. 304, 305 (9th Cir. 2021).

68.     Under *DeGrassi* (any time, place or manner "regulation on speech [must be] reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." 207 F.3d at 645-46.

69.     The punishment imposed on Councilman Skillicorn for comments made at the Town Council meeting are the antithesis of reasonable time, place and manner restrictions that are viewpoint neutral.  Councilman Skillicorn was punished precisely because four of the seven councilmembers objected to the viewpoint, the content, he expressed.

70.     The individual Defendants are not entitled to qualified immunity for their actions and personal liability should be imposed.  A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [official's] conduct violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). What this means is "in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).   "The relevant, dispositive inquiry ... is whether it would be clear to a reasonable [official] that his conduct was unlawful *in the situation he*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*confronted.*" *Norwood v. Vance,* 591 F.3d 1062, 1068 (9th Cir. 2010) (quoting *Saucier,* 533 U.S. at 202).

71.    Ms. Vannucci's statement that "[o]nce Councilman Skillicorn realized it was a Town truck he was following, he could have contacted the Town Manager to determine how to retrieve the sign and for an explanation of why it was removed" also itself betrays a constitutional violation.

72.    The government is not permitted to dictate the manner in which a citizen decides to approach a government employee and may impose no malleable "politeness" or "civility" requirement, which means different things to different people anyway.

73.    Councilman Skillicorn took this action purely as a private citizen.  A private citizen could not conceivably be punished for a simple exercise of one's rights the way Skillicorn did .  Nor can a councilmember.  Councilmembers enjoy no fewer rights than anyone else. *DeGrassi*, 207 F.3d at 646.

74.    It was absolutely clear to any reasonable public official that a governmental entity may not punish an individual for constitutionally protected free speech, and constitutionally protected attempts to seek redress of grievances from government officials.

## **COUNT TWO**

**Violation of Plaintiff's right to due process and  equal  protection  of  the  laws under  the  First  and  Fourteenth Amendments to the Constitution of the United States**
**(All Defendants)**

75.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated here.

76.     The Fountain Hills Town Ethics Code is clearly deficient in terms of the notice it gives of what behavior it requires or expects.

77.     The United States Court of Appeals for the D.C. Circuit has stated:

> "A fundamental principle in our legal system," the Supreme Court observed in *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012), "is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Id.* at 253, 132 S.Ct. 2307. Such "[e]lementary notions of fairness," the Court explained in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that [the government] may impose." *Id.* at 574, 116 S.Ct. 1589. "<u>This requirement of clarity[,] ... essential to the protections provided by the Due Process Clause of the Fifth Amendment,</u>" *Fox Television*, <u>567 U.S. at 253, 132 S.Ct. 2307, "is implicated" whenever the government imposes "civil penalties,</u>" *Gore*, 517 U.S. at 574 n.22, 116 S.Ct. 1589 (emphasis omitted). <u>Where such penalties "threaten[ ] to inhibit the exercise of constitutionally protected rights[,] ... a more stringent vagueness [and fair-notice] test should apply.</u>" *665 **112 *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

*Karem v. Trump*, 960 F.3d 656, 664–65, 447 U.S.App.D.C. 103, 111–12 (D.C. Cir. 2020)(emphasis added).

79.     Vannucci's report stated the ethics violation that Skillicorn committed.  To wit, he failed to "set[] a positive example of good citizenship' as required by the Code of Ethics."  Specifically, Section 8.2 of the Ethics Code states that "that Council shall… set a positive example of good citizenship by scrupulously observing the letter and spirit of laws, rules and regulations."

80     A requirement to demonstrate "good citizenship" is hopelessly vague, and basing punishment on a provision of law that fails to give "fair notice" of what actions are actually prohibited and would subject a person to significant sanctions.

81.    There is no qualified immunity as the violations here are of clearly established rights that any reasonable official should be aware of.

## PRAYER FOR RELIEF

WHEREFORE, having fully pled the causes of action, Plaintiff respectfully requests this Court to:

A.    Issue a declaratory judgment that the conduct of Defendants as described above violated Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. §1983;

B.    Issue a temporary restraining order and preliminary and permanent injunctions prohibiting Defendants from violating Plaintiff's rights in the future, and enjoining Defendants from imposing the "discipline" of Councilman Skillicorn adopted by a majority of the Fountain Hills Town Council;

C.    Award Plaintiff nominal damages against each Defendant, jointly and severally, in the amount of $1.00;

D.    Award Plaintiff compensatory damages against each Defendant, jointly and severally, in an amount to be determined at trial;

E.    Award Plaintiff punitive damages against each Defendant, jointly and severally, in an amount to be determined at trial;

F.    Award Plaintiff his reasonable attorney fees and costs pursuant to 42 U.S.C. §1988, and any other applicable law; and

G.    Award Plaintiff all other relief that is just and appropriate under the circumstances.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues in this litigation that are triable to a jury.

**RESPECTFULLY SUBMITTED** this 10th day of May, 2024.

**TIMOTHY A. LA SOTA, PLC**

By:     /s/ Timothy A. La Sota
        TIMOTHY A. LA SOTA
        2198 E. CAMELBACK RD., SUITE 305
        PHOENIX, ARIZONA 85016
        A*ttorney for Plaintiff*

# EXHIBIT 1

## SECTION 1.   RULES OF PROCEDURE/AUTHORITY

**1.1      PROCEDURES**

The following are the basis for and are used in conjunction with these basic Rules of Procedure for meetings of the Council, Boards, Commissions and Committees:

A.       State Law

B.       Town Code, including these Council Rules

C.       Parliamentary Procedure at a Glance, New Edition, by O. Garfield Jones

D.       Roberts Rules of Order, 12th edition, as amended

In case of inconsistency, conflict, or ambiguity among the documents listed above, such documents shall govern in the order in which they are listed.

**1.2      PRESIDING OFFICER**

As provided by the Town Code, the Mayor, or in the Mayor's absence, the Vice-Mayor, is the Presiding Officer of all meetings of the Council.  In the absence or disability of both the Mayor and the Vice-Mayor, the meeting shall be called to order by the Town Clerk, whereupon, the Town Clerk shall immediately call for the selection of a temporary Presiding Officer.  If a majority of the Councilmembers present are unable to agree on a Presiding Officer for the meeting, the meeting shall automatically be adjourned and all agenda items shall be carried over to the next regular Council meeting.

**1.3      PARLIAMENTARIAN**

The Town Attorney shall serve as Parliamentarian for all meetings. The Town Clerk shall act as Parliamentarian in the absence of the Town Attorney and the Town Manager shall act as Parliamentarian in the absence of both the Town Attorney and Town Clerk.

**1.4      SUSPENSION OF THE RULES**

The Council, by a three-quarter vote of all members present, may suspend strict observance of these Council Rules or other policies and procedures for the timely and orderly progression of the meeting; provided, however, that a simple majority of the Council may cause a change in the order of items on the agenda.

## SECTION 2. DEFINITIONS

**2.1      AGENDA**

As set forth in the Order of Business, an agenda is a formal listing of items to be considered by (i) the Council at a noticed meeting of the Council or (ii) the applicable Board, Commission or Committee at a noticed meeting of that body. The content of the agenda may not be changed less than 72 hours prior to the public meeting, except in exceptional circumstances, but in no event shall the agenda be altered less than 24 hours prior to the public meeting, unless otherwise authorized by State law.

**2.2      AGENDA PACKET**

A compilation of documents supporting the items listed on the agenda and requiring Council consideration or action, which may be used by Council, staff and the public for more in-depth information than may be presented in an oral report. The agenda Packet is organized as set forth in the Order of Business in Section 5 below and is made available electronically to the Council or to any citizen on the Town's website: www.fountainhillsaz.gov by 6:00 p.m. the Thursday prior to the date of the meeting.

**2.3      CONSENT AGENDA**

Items listed on the Consent Agenda are considered to be routine, non-controversial matters and will be enacted by one motion and vote of the Council. All motions and subsequent approvals of Consent Agenda items will include all recommended staff stipulations unless otherwise stated. There will be no separate discussion of these items unless a Councilmember or member of the public so requests. If a Councilmember or member of the public wishes to discuss an item on the consent agenda, he/she may request so prior to the motion to accept the Consent Agenda or by notifying the Town Manager prior to the date of the meeting. The item will be removed from the Consent Agenda and considered in its normal sequence on the agenda.

**2.4      COUNCIL**

Collectively, the Mayor and Common Council of the Town of Fountain Hills.

**2.5      COUNCIL RULES**

These Town of Fountain Hills, Arizona Town Council *Rules of Procedure*.

**2.6      MEETING**

The gathering, in person or by technological devices, of a quorum of the Council, Boards, Commissions or Committees, at which the Councilmembers, Board members, Commissioners, or Committee members discuss, propose or take legal action, including any deliberations by a quorum with respect to such

action.  If a quorum is not present, those in attendance will be named for the record by the Town Clerk or the staff liaison for a Board, Commission or Committee.

**2.7     NEWSPAPER**

A daily or weekly paid publication of general circulation within the Town of Fountain Hills, Arizona.

**2.8     NOTICE**

A formal announcement to the public that sets the date, time and the place at which a meeting will be held.  Such notice of meetings shall be in accordance with the State law, the Town Code and these Council Rules.

**2.9     QUORUM**

The minimum number of Members of the Council, Board, Commission, or Committee that must be present in order for business to be legally transacted. **Unless otherwise specified in State law or the town Code, a quorum is the majority of members of the public body.**

**2.10    TOWN**

The Town of Fountain Hills, an Arizona municipal corporation.


**SECTION 3.  MEETINGS**

**3.1     REGULAR MEETINGS**

A.      Regular Meeting Date; Time. The Council shall hold regular meetings on the first and third Tuesday of each month at 5:30 P.M. When deemed appropriate, any regular meeting date of the Council may be changed or cancelled by a majority of the Council.  Notice of the rescheduled or cancelled meeting shall be given to the public as is reasonable and **practicable** under the circumstances **and in compliance with State law**. All regular meetings shall be held at the Town Hall Council Chambers or at such place as may be prescribed by the Mayor or the Town Manager. The Council may provide for a "Call to the Public'' at such regular meetings.

B.      Holidays.  When the day for a regular meeting of the Council falls on a legal holiday, no meeting shall be held on such holiday, but such meeting shall be held at the same time and the same location on the day designated by the Council that is not a holiday, unless the meeting is otherwise cancelled by the Council.

### 3.2    ADJOURNED MEETINGS

Any meeting may be adjourned to a time, place and date certain, but not beyond the next regular Council meeting.  Once adjourned, the meeting may not be reconvened except at the time, date and place provided for in the motion to adjourn.

### 3.3    SPECIAL MEETINGS

The Mayor, the Town Manager, or the Town Clerk (upon the written request of three Councilmembers), may convene the Council at any time after giving at least 24 hours' notice of such meeting to members of the Council and the general public. The notice shall include the date, place, hour and purpose of such special meeting.

### 3.4    WORK SESSIONS

A.    How Convened; When Convened; Notice. The Mayor or the Town Manager (at his own discretion or upon the written request of three Councilmembers) may convene the Council in a work session at any time after giving notice at least 24 hours in advance of such work session to members of the Council and the general public.  The notice shall include the date, place, hour and purpose of such work session.

B.    Purpose. Work sessions are held for the purpose of presentations and discussions on such issues that require more in-depth consideration of the Council than may be possible at a regular meeting. No formal action of the Council may be taken at such work session, other than general consensus or conveying direction to staff for further action. These work sessions shall not provide for a "Call to the Public."

### 3.5    EXECUTIVE SESSIONS

Subject to applicable State law, the Council may hold such closed executive sessions as necessary to conduct the business of the Town.

### 3.6    EMERGENCY MEETINGS

As provided for by State law, the Mayor and Council or the Town Manager may call a special emergency meeting to discuss or take action on an unforeseen issue where time is of the essence and sufficient time does not provide for the posting of a meeting notice 24 hours or more before the meeting.  Notice of an emergency meeting of the Council will be posted within 24 hours following the holding of an emergency meeting.  The notice will include the emergency meeting's agenda and a brief but complete description of the nature of the emergency. Emergency meetings shall not provide for a "Call to the Public."

**3.7    MEETINGS TO BE PUBLIC**

A.    Open to Public. With exception of executive sessions, all regular, special and work session meetings of the Council, Boards, Commissions, and Committees shall be open to the public.

B.    Public Comment. Public comment is not taken at work sessions, emergency meetings or at special meetings, unless the special meeting is held in place of a regular meeting, or unless the special meeting includes a public hearing on the-agenda.

**3.8    MINUTES OF MEETINGS**

A.    Staffing. The Town Clerk shall ensure staff attendance at all regular, special, work session, emergency and executive session meetings of the Council for the purpose of taking notes and/or audio recordation of the meeting. The Town staff liaison to each Board, Commission or Committee shall ensure staff attendance at all meetings for the purpose of taking notes and/or audio recordings of the meetings.

B.    Recordings; written minutes. To the extent possible, all open, public meetings shall be recorded by means of audio or video technology.  In addition, written minutes reflecting legislative intent shall be taken so that an accounting of the issues discussed and actions taken are compiled and entered into the permanent Minute Book of the Town and kept on file and of record in the Office of the Town Clerk.  Audio or video recordings of meetings will be retained for a period of time in accordance with the current Town of Fountain Hills and/or State of Arizona approved records retention and disposition schedules. Minutes shall identify speakers by name and shall indicate whether they are Fountain Hills residents, and whether they support or oppose the proposed action (i.e. "for" or "against") along with a summary of the speakers' verbal comments provided at the meeting.

C.    Availability. All meeting minutes of the Council, Boards, Commissions, and Committees are deemed to be public records, with the exception of executive session minutes, which, while they fall under the definition of and are considered public records by State law, are deemed confidential and are only available under limited conditions or by Court Order. Transcribed minutes, or the audio or video recordings of all open meetings of the Council, Boards, Commissions, and Committees must be available for public review by 5:00 p.m. on the third working day following each meeting, or as provided by State law. The Town Clerk or designee shall ensure that the minutes of all regular, special meetings and work sessions of the Council, Boards, Commissions, and Committees are made available through the Town's Web Site, www.fountainhillsaz.gov within two working days following their approval, or as provided by State law.

D.    Executive Sessions. Minutes of executive sessions (1) shall be confidential; (2) are maintained and secured by the Town Clerk; and (3) may be accessed only as provided by State law.

E.      Approval.  Minutes of all meetings of the Council (other than executive sessions) may be approved under the consent agenda, unless removed for discussion and separate action.


## SECTION 4. NOTICE AND AGENDA

**4.1      POSTING NOTICES**

A.      Time.  The Town Clerk, or authorized designee, shall prepare all public meeting notices of the Council, and shall ensure posting of the meeting notices no less than 24 hours before the date and time set for said meetings in accordance with State law. The staff liaison to each Board, Commission or Committee shall ensure that agendas are posted in the same manner as for the Council.

B.      Locations.   Meeting notices shall be posted at a minimum of three locations within the Town, including the Community Center, Town Hall, and the Town's website: www.fountainhillsaz.gov

**4.2      AGENDA PREPARATION**

A.      Availability.  The Town Manager, or authorized designee, shall prepare the agendas for all meetings of the Council as set forth below. Agendas of all meetings of the Council shall generally be available to the public no less than 72 hours prior to said meetings, except in exceptional circumstances. In no event shall the agenda be made available less than 24 hours prior to said meeting unless authorized by State law. Agendas and agenda packet materials are made available through the Town's website. The staff liaison to each Board, Commission or Committee shall ensure that the agenda is available in the same manner as required for the Council.

B.      Submittal Process.  Items may be placed on the Council agenda for discussion and possible action by the following process (the agenda process for Boards, Commissions or Committees shall be as determined by the applicable Department Head which shall be substantially the same as the Council agenda submittal process):

    1.      All Departments:  Preparation of the Staff Report with signatures of the department director and staff (including all attachments) provided to the Town Clerk for submittal to the Town Manager not later than two business days prior to agenda packet preparation day (the Tuesday prior to the meeting date). Town Manager approves/amends items and signs off, finalizing the item for inclusion in the agenda packet.

    2.      Mayor and Councilmembers: The Mayor or a Councilmember with the support of two additional councilmembers may direct the Town Manager through the Future Agenda Item Category to place an item on the next available agenda for consideration and possible action.

3. Town Manager and Town Attorney: The Town Manager or Town Attorney may place an item on the agenda by including appropriate documentation.

4. Citizen or Group: A citizen or group may request an item be placed on an agenda through the Manager, Mayor, or a Councilmember as indicated above.

C. <u>Time Lines for Submission of Items</u>.

1. Agenda items shall be submitted to the Town Manager by 2:00 p.m., not less than nine calendar days prior to regular and special meetings to ensure timely delivery to Councilmembers.

2. Agenda items for work sessions shall be submitted to the Town Manager by 2:00 p.m., not less than seven calendar days prior to the meeting to ensure timely delivery to Councilmembers.

3. The Town Manager may approve exceptions to the schedule above in order to ensure that the distribution of all agenda packets to the Council is in conformance with these Council Rules.

4. Any requests requiring audio/visual support must be submitted to the Town Clerk for coordination with the information and technology division a minimum of 48 hours prior to the meeting to ensure proper coordination and preparation. Department directors are responsible for obtaining presentation materials from applicants or presenters involved in their respective agenda items.

D. <u>Agenda Item Submittals for Council Executive Sessions</u>. Items may be placed on the agenda for Council executive session discussion (if in compliance with the Town Code and applicable State Statutes) by the following process:

1. Submission by a Councilmember, the Town Manager, or the Town Attorney (with notice to all Councilmembers).

2. Submission by the Mayor (with notice to all Councilmembers).

3. The Town Manager and the Town Attorney shall review the submittal for executive session discussions prior to placement on the agenda, to ensure that the item is the proper subject of an executive session pursuant to state law.

4. The Town Attorney shall advise the Town Clerk regarding the appropriate agenda language of executive session items.

E. <u>Agenda Packets</u>. Full agenda packets for all noticed meetings (except executive session documentation) of the Council shall be made available to Council members electronically, five days before regular meetings and work sessions; provided, however, that agenda packets may be

**Page 7**

supplemented later under special circumstances so long as no agenda packet material is made available less than 72 hours prior to the meeting, except in the case of exceptional circumstances or an emergency meeting.

F.      Removal Requests.  Requests to remove items from the Consent Agenda occurring after the 72-hour posting deadline will be announced by the Mayor at the beginning of the meeting at which the item was scheduled. The posted agenda will remain unchanged.

**4.3     DISTRIBUTION OF NOTICES AND AGENDAS**

A.      Copies.  The Town Clerk shall ensure that the Mayor and Council receive copies of all meeting notices and agendas and any documentation provided for said meeting electronically, not less than 72 hours prior to the meeting, unless exceptional circumstances require a later delivery.

B.      Distribution. The Town Clerk shall ensure that the meeting notices, agendas and packet documentation, as deemed necessary, are posted to the Town's website: www.fountainhillsaz.gov and made available to the Mayor and Council, the public, Town Manager, Town  Attorney, and staff electronically by 6:00 p.m. on the Thursday prior to the date of the meeting.

C.      Amendments. A posted agenda may be amended up to 72 hours prior to such meeting.  In exceptional circumstances, such agenda may be amended up to, but not less than, 24 hours prior to the designated meeting, unless otherwise authorized by State Law. Amended agendas shall indicate the date amended.

**4.4     DISTRIBUTION OF MATERIALS/HANDOUTS FOR PROPOSED LANGUAGE TO AGENDA ITEMS**

Mayor and Councilmembers: The Mayor and Councilmembers may submit a written document/handout for councils' consideration regarding an item on the next council agenda. The document/handout must be presented to the Town Clerk no later than 3:00 pm the day of the council meeting. Handouts submitted after the deadline will not be disseminated to the council for consideration at that meeting.

The Town Clerk will place any Councilmember's handout(s) along with any online public comment cards at each station on the dais prior to the council meeting and will announce the documents when that agenda item is under consideration.

This process will ensure the Town Clerk has the written document/handout for the permanent record, solve any transparency issues, minimize any potential open meeting violations, and avoid any disruption during the council meeting.

## SECTION 5.  ORDER OF BUSINESS

**5.1    ORDER OF BUSINESS**

The Order of Business of each meeting shall be as contained in the agenda. The agenda shall be a sequentially numbered listing by topic and a brief description of business items that shall be taken up for consideration.

**5.2    REGULAR MEETINGS**

The agenda shall be prepared substantially in the following order, but may be amended for brevity:


**AGENDA**

**Call to Order & Pledge of Allegiance**

**Invocation/Moment of Reflection**

**Roll Call**

**Statement of Participation**

**Reports by Mayor, Councilmembers and Town Manager** (including proclamations) (No discussion)

**Presentations** (if any)

**Call to the Public** (Non-agenda items) (preceded by the following paragraph)

Pursuant to ARIZ. REV. STAT. § 38-431.01 (H), public comment is permitted (not required) on matters not listed on the agenda. Any such comment (i) must be within the jurisdiction of the Council and (ii) is subject to reasonable time, place and manner restrictions. The Council will not discuss or take legal action on matters raised during "Call to the Public'' unless the matters are properly noticed for discussion and legal action.  At the conclusion of the call to the public, individual Councilmembers may (i) respond to criticism, (ii) ask staff to review the matter or (iii) ask that the matter be placed on a future Council agenda.

**Consent Agenda** (preceded by the following explanatory paragraph)

All items listed are considered to be routine, non-controversial matters and will be enacted by one motion and vote of the Council. All motions and subsequent approvals of consent items will include all recommended staff stipulations unless otherwise stated. There will be no separate discussion of these items unless a Councilmember or member of the public so requests. If a Councilmember or

**Page 9**

member of the public wishes to discuss an item on the consent agenda, he/she may request so prior to the motion to accept the Consent Agenda or with notification to the Town Manager or Mayor prior to the date of the meeting for which the item was scheduled. The item will be removed from the Consent Agenda and considered in its normal sequence on the agenda.

**Action Items** (grouped by subject to the extent possible)

**Council Discussion/Direction to the Town Manager**

**Future Agenda Items**

**Adjournment**

All agendas shall have the following statement placed at the bottom:

The Town of Fountain Hills endeavors to make all public meetings accessible to persons with disabilities. Please call 837-2003 (voice) or 1-800-367-8939 (TDD) 48 hours prior to the meeting to request a reasonable accommodation to participate in this meeting or to obtain agenda information in large print format.

A.   Roll Call. Following the Call to Order and the Pledge of Allegiance, the Moment of Reflection or Invocation and before proceeding with the business of the Council, the Presiding Officer shall direct the Town Clerk or authorized designee to call the Roll, and the names of Councilmembers both present and absent shall be entered into the minutes. The order of roll call shall be: Mayor, Vice Mayor and then Councilmembers from the Mayor's far right to the Mayor's far left.

B.   Statement of Participation. Following the Roll Call, the Town Clerk will read the Statement of Participation at each Regular meeting and will consist of the following: Anyone wishing to address the council regarding items listed on the agenda or under "Call to the Public" should fill out a request to comment card located in the back of the council chambers and hand it to the Town Clerk prior to consideration of that agenda item. When your name is called, please approach the podium, speak into the microphone, and state your name and if you are a resident for the public record. Please limit your comments to three minutes. It is the policy of the Mayor and Council to not comment on items brought forth under "Call to the Public." However, staff can be directed to report back to the council at a future date or to schedule items raised for a future council meeting.

C.   Report by Mayor, Councilmembers and Town Manager

The Mayor may use Reports to read proclamations or conduct other ceremonial matters as listed on the posted agenda and reports may be given by the Mayor, Councilmembers and Town Manager on current events and/or activities. (The Arizona Open Meeting Law does not allow discussion or action on any matter mentioned during the reports.)

D.      Presentations. The Town Manager may use the Presentations section to provide the council with an update from Department Directors, contracted service providers, neighboring jurisdictions, and regional organizations.

E.      Call to the Public.

   1.      All citizens and interested parties will be limited to a maximum of three minutes to address the Council on a non-agenda item.

   2.      All citizens and interested parties wishing to speak before the Council shall fully complete a Request to Comment form (Request Form). Request forms submitted by those who indicate they will not speak will be grouped together in the order in which the cards were received and by the categories of "for" and "against" relating to the item indicated on the request forms. The Town Clerk will announce the number of cards received, if any, and t h e number received per category.

   3.      At the conclusion of each citizen's comments, the Presiding Officer may take any or all of the following actions:

      a.      Thank speaker for addressing issue.
      b.      Ask staff to review matter.
      c.      Ask that a matter be put on a future agenda.
      d.      Permit individual Councilmembers to respond to criticism raised during the Call to the Public

   4.      At the discretion of the Presiding Officer a light and/or sound signals may be used to indicate the commencement of the time for speaking and a warning light may flash to show that the appropriate time has passed. A red light will signal that there is no longer any remaining time.

E.      Consent Agenda

   1.      The Consent Agenda includes items that are of such a nature that discussion is not required, or issues that have been previously studied by the Council. These items may be adopted by one motion and vote.

   2.      There is no detailed discussion on items listed under the Consent Agenda, unless a member of the Council or any member of the public in attendance at the meeting requests that an item or items be removed for discussion. Councilmembers or the public may not ask a question without removal of the item from the Consent Agenda.

   3.      Items removed from the Consent Agenda are considered in their normal sequence as listed on the agenda, unless called out of sequence as provided under Section 1.4

**Page 11**

(Suspension of the Rules) above.

F.   <u>Action Items</u>.

1.   At the time each business item is presented to the Council, the Town staff shall present a report on the subject and the applicant, if any, may also speak. The Mayor or the Town Clerk, or authorized designee, will then call the request forms of those citizens desiring input and comments. All citizens and interested parties wishing to speak before the Council shall fully complete request forms and submit the forms to the Town Clerk, or authorized designee, prior to Council discussion of that agenda item.

Sufficient request forms shall be located in the Council Chamber's Lobby (the public entry area into the Chamber) and at the Town Clerk's position on the dais. Completed request forms will be retained by the Town Clerk until the draft minutes are approved by the Council at a subsequent meeting. Speakers' names and comments will be included in the meeting minutes. Speakers will be called in the order in which the request forms were received. If a speaker chooses not to speak when called, such speaker will be deemed to have waived his/her opportunity to speak on that matter.

2.   Those speaking before Council will be allowed three contiguous minutes to address Council, but time limits may be waived, **upon advice of the Town Attorney**, by (a) discretion of the Town Manager upon request by the speaker not less than 24 hours prior to a meeting, (b) consensus of the Council at a meeting or (c) the Mayor either prior to or during a meeting. Speakers may not (a) reserve a portion of their time for a later time, or (b) transfer any portion of their time to another speaker.

3.   Residents may also use the online request form to provide input regarding an item on the agenda. The online form is found on the Towns website. The resident must completely fill out the online form and submit it no later than 3:00 p.m. on the day of the council meeting for this item. The Town Clerk will place copies at each councilmembers station on the dais, and when the item is up for discussion after all of the in-person comments have concluded, will read the speaker's name and whether or not they are "for" or "against" the item for the public record. Written comments provided through the online form, will not be read out loud at the meeting.

4.   The purpose of all public comments is to provide information and the speaker's views for Council consideration. It is not appropriate for the speakers to question directly, or debate the matter under consideration with staff, other speakers, the audience or Councilmembers; all remarks will be addressed to the Presiding Officer and not to individual Councilmembers. All comments shall be addressed through the Presiding Officer who shall decide if any response is warranted and who, if anyone, shall address the concern. Councilmembers may request, upon recognition by the Presiding Officer, clarification of comments or materials presented by the speakers, any applicant's

**Page 12**

representatives or Town staff; provided, however, that no Councilmember shall engage in debate directly with such speakers, representatives or Town staff.

5.      Proper decorum, in accordance with Section 6.4 below, must be observed by Councilmembers, by speakers in providing testimony and remarks and by the audience. In order to conduct an orderly business meeting, the Presiding Officer shall keep control of the meeting and shall require the speakers and audience to refrain from abusive or profane remarks, disruptive outbursts, applause, protests or other conduct that disrupts or interferes with the orderly conduct of the business of the-meeting. Personal attacks on Councilmembers, Town staff or members of the public are not allowed.

6.      Generally, agenda items requiring public hearings, other than those of a quasi-judicial nature, shall be conducted in the following order:

      a.      The Presiding Officer will announce the matter that is set forth for a public hearing, will then open the public hearing, and, if appropriate, ask the staff to provide a report of the matter.

      b.      The Presiding Officer will then ask the applicant to speak regarding the matter.

      c.      After all public comments are heard, the Presiding Officer will close the public hearing, and may ask staff or the applicant to respond to the comments.

      d.      The Presiding Officer may then call for a motion and second, if applicable, and ask if Council wishes to discuss the issue. Council may then proceed to discuss the matter.

      e.      Upon the conclusion of Council comment, the Presiding Officer will call for action on the motion.

      f.      Exhibits, letters, petitions, and other documentary items presented or shown to the Council on a public hearing item become part of the record of the public hearing and shall be maintained by the Town Clerk.

      g.      Ten collated sets of written or graphic materials should be provided by the speaker to the Town Clerk prior to the commencement of the hearing to allow for distribution to the Council, key Town staff and the Town Clerk for inclusion in the public record. Reduced copies (8" x 11") of large graphic exhibits should be provided as part of the sets of materials for distribution as provided above. The appropriate staff member shall be responsible to notify applicants of this requirement.

7.      Questions or comments from the public shall be limited to the subject under

consideration. Depending upon the extent of the agenda and the number of persons desiring to speak on an issue, the Presiding Officer may, at the beginning of the agenda item, limit repetitive testimony, and limit the amount of time per speaker. Upon approval of (a) the Presiding Officer or (b) a majority of the Council, persons may be allowed to speak longer than three minutes. Councilmembers may ask the individual speaker questions through the Presiding Officer.

8.    Quasi-judicial hearings shall be conducted in accordance with the principles of due process, and the Town Attorney shall advise the Council in this regard.

G.    **Council Discussion/Direction to the Town Manager.** The Council may (1) request the Town Manager to follow-up on matters presented at that meeting; and/or (2) a consensus of the Council may request the Town Manager to research a matter and report back to the Council.

H.    Adjournment. The open, public meeting of the Council may be adjourned by consensus of the Council.

**5.3    SPECIAL MEETINGS**

A.    As Substitute for Regular Meeting. If a special meeting is being held as an extension of or in place of a regular meeting, the agenda shall be as set forth for a regular meeting.

B.    Generally. For all other special meetings, the agenda shall be prepared in the following order:

**AGENDA**

**Call to Order**
**Roll Call**
**Consent Agenda** (if needed —explanatory paragraph same as regular meeting)
**Action Items** (grouped by subject to the extent possible)
**Adjournment**

**5.4    WORK SESSION MEETINGS**

The primary purpose of work sessions is to provide the Council with the opportunity for in-depth discussion and study of specific subjects. Public comment is not provided for on the agenda and may be made only as approved by consensus of the Council. In appropriate circumstances, a brief presentation may be permitted by a member of the public or another interested party on an agenda item if invited by the Mayor and Council to do so. The Presiding Officer may limit or end the time for such presentations.

**Page 14**

The work session agenda shall be prepared in the following order:

**Call to Order**

**Roll Call**

**Work Session Statement** (explanatory statement)

**All Items Listed Are for Discussion Only.  No Action Can or Will Be Taken.** The primary purpose of work sessions is to provide the Council with the opportunity for in-depth discussion and study of specific subjects.  Public comment is not provided for on the agenda and may be made only as approved by consensus of the Council. In appropriate circumstances, a brief presentation may be permitted by a member of the public or another interested party on an agenda item if invited by the Mayor or the Town Manager to do so. The Presiding Officer may limit or end the time for such presentations.

**Agenda Items for Discussion** (Items Numbered for Order)

**Adjournment**

SECTION 6.  PROCEDURES FOR CONDUCTING THE MEETING

**6.1     CALL TO ORDER**

A meeting of the Council shall be called to order by the Presiding Officer, (the Mayor or in his/her absence, by the Vice-Mayor). In the absence of both the Mayor and Vice-Mayor, the meeting shall be called to order by the Town Clerk, who shall immediately call for the selection of a temporary Presiding Officer.

**6.2     PARTICIPATION OF PRESIDING OFFICER**

The Presiding Officer may debate from the Chair, subject only to such limitations of debate as are imposed on all Councilmembers, and he/she shall not be deprived of any of the rights and privileges of a Councilmember by reason of his/her acting as Presiding Officer.  However, the Presiding Officer is primarily responsible for the conduct of the meeting.

**6.3     QUESTION TO BE STATED**

The Presiding Officer shall verbally restate, or shall ask the Town Clerk to verbally restate, each question immediately prior to calling for discussion and the vote. Following the vote, the Presiding Officer shall ask the Town Clerk or authorized designee to verbally announce the results of voting, including the ayes, nays and abstentions. The Presiding Officer shall publicly state the effect of the

vote for the benefit of the audience before proceeding to the next item of business. Formal votes shall not be taken at work sessions or executive sessions.

### 6.4    RULES/DECORUM/ORDER

A.    <u>Points of Order.</u> The Presiding Officer shall determine all points of order after consultation with the Parliamentarian, subject to the right of any member to appeal such determination to the whole Council. If any appeal is taken, the question (motion) shall be substantially similar to the following: "Shall the decision of the Presiding Officer be sustained?" In which event, following a second, a majority vote shall govern, and conclusively determine such question of order.

B.    Order and Decorum

    1.    Councilmembers: Any Councilmember desiring to speak shall address the Presiding Officer and, upon recognition by the Presiding Officer, may speak.

    2.    Employees: Members of the administrative staff and employees of the Town shall observe the same rules of procedure and decorum applied to Councilmembers. The Town Manager shall ensure that all Town employees observe such decorum and will direct the participation of any staff member in the discussion of the Council. The Town Manager shall first be recognized by the Presiding Officer prior to addressing the Council. Any staff member desiring to speak shall first be recognized by the Town Manager.

    3.    Public: Members of the public attending the meetings shall observe the same rules of order and decorum applicable to the Council. Unauthorized remarks or demonstrations from the audience, such as applause, stamping of feet, whistles, boos or yells shall not be permitted by the Presiding Officer, who may direct a law enforcement officer to remove such offender/s from the room.

C.    Enforcement of Decorum. Proper decorum is to be maintained during all meetings by the Council, staff and guests. It is the responsibility of the Presiding Officer of the meeting to ensure compliance with this Policy. The Presiding Officer shall request that a speaker refrain from improper conduct; if the speaker refuses, the Presiding Officer may end the speaker's time at the podium. If the speaker refuses to yield the podium after being asked to do so by the Presiding Officer, the Presiding Officer may (1) recess the meeting for a brief time (2) end the speaker's time at the podium or (3) direct a law enforcement officer present at the meeting to remove from the meeting the person whose conduct is disorderly or disruptive.

### 6.5    TELECONFERENCE PROCEDURE

Meetings may be conducted by teleconference as follows:

A.    <u>Prior Notice</u>. When a Councilmember is unable to attend a meeting and desires to participate

in the meeting by telephone, the Councilmember shall be permitted to do so provided he/she gives the Town Clerk, or authorized designee, notice of his/her inability to be present at the meeting at least 48 hours prior to the meeting.

B.     Notation on Agenda.   The notice of the meeting and the agenda shall include the following: "Councilmembers of the Town of Fountain Hills will attend either in person or by telephone conference call.''

C.     Public Access.   Facilities will be used at the meeting to permit the public to observe and hear all telephone communications.

D.     Notation in Minutes. The minutes of the meeting shall clearly set forth which members are present in person and which are present by telephone.

**6.6    ADDRESSING THE COUNCIL**

A.     Manner of Addressing the Council.

   1.     Any member of the public desiring to address the Council shall proceed to the podium after having been recognized by the Presiding Officer. There shall be no loud vocalization (shouting or calling out) from the seating area of the Council Chamber. At the podium, the speaker shall clearly state his/her name for the record and shall indicate if he/she is a Town resident.

   2.     Special assistance for sight and/or hearing-impaired persons can be provided. Anyone requiring such assistance should contact the Town Clerk 48 hours before a meeting to request an accommodation to participate in the meeting.

B.     Limitation Regarding Public Comment and Reports. The making of oral communications to the Council by any member of the public during the "Call to the Public: (Non-agenda Items)" or under an action item, shall be subject to the following limitations:

   1.     All citizens wishing to address the Council shall complete and submit a request form as set forth in Subsection 5.2(F) above.

   2.     The Presiding Officer may limit the number of speakers heard on non--agenda topics at any single meeting to allow the meeting to proceed and end in a timely manner.

   3.     If it appears that several speakers desire to provide repetitive comments regarding a single topic, the Presiding Officer may limit the number of speakers.

**Rules of Procedure - 9/06/2023**

C.    Motions.

1.    Processing of Motions:  When a motion is made and seconded, it shall be stated by the Presiding Officer before debate.

2.    Precedence of Motions: When a motion is before the Council, no motion shall be entertained except the following, which shall have precedence in the following order:

a.    Fix the time to adjourn
b.    Adjourn
c.    Recess
d.    Raise a question of Privilege
e.    Table
f.    Limit or extend limits of debate
g.    Postpone to a certain time and date
h.    Amend
i.    Postpone Indefinitely
j.    Main Motion

3.    Motion to Postpone Indefinitely: A motion to postpone indefinitely is used to dismiss an item on the agenda. This motion is debatable, and because it can be applied only to the main question, it can, therefore, only be made while the main question is immediately pending (a motion and second is on the floor).   This motion is commonly used to postpone an item until a more appropriate time.

4.    Motion to Table: A motion to table enables the assembly to lay the pending question aside temporarily when something else of immediate urgency has arisen, in such a way that there is no set time for taking the matter up again.  A motion to table shall be used to temporarily by-pass the subject. A motion to table shall not be debatable and shall preclude all amendments or debate of the subject under consideration. If the motion shall prevail, the matter may be "taken from the table" at any time prior to the end of the next regular meeting.

5.    Motion to Limit or Terminate Discussion: Such a motion shall be used to limit or close debate on, or further amendment to, the main motion. This is referred to as "Call for the Question" and is the motion used to cut off debate and to bring the group to an immediate vote on the pending motion; it requires a two-thirds vote. The vote shall be taken by voice.  If the motion fails, debate shall be reopened; if the motion passes, a vote shall be taken on the main motion.

**Page 18**

6.      Motion to Amend:

      a.      A motion to amend shall be debatable only as to the amendment. A motion to amend an amendment on the floor shall not be in order.

      b.      An amendment modifying the intention of a motion shall be in order, but an amendment relating to a different matter shall not be in order.

      c.      Amendments shall be voted on first, prior to consideration of subsequent amendments. After all amendments have been voted on, the Council shall vote on the main motion (as amended, if applicable).

7.      Motion to Continue: Motions to continue shall be debatable only as to the propriety of postponement. Motions to continue to a definite time shall be amendable and debatable as to propriety of postponement and time set only.

D.      <u>Addressing the Council after Motion is made.</u> After the motion has been made, or after a public hearing has been closed, no member of the public shall address the Council without first securing permission from the Presiding Officer.

E.      <u>Voting Procedure.</u> After discussion has been concluded and the Mayor, the Councilmember who made the motion or the Town Clerk has restated the motion under consideration, the following procedure shall apply:

1.      Casting a Vote:

      a.      In acting upon every motion, the vote shall be taken by casting a mechanical yes/no vote, voice, roll call or any other method as determined by the Presiding Officer, by which the vote of each member of the Public Body can be clearly ascertained and recorded in the meeting minutes. Upon the request of the Mayor or a Councilmember, the vote shall be taken by roll call.

      b.      The vote on each motion shall be entered into the record by names of the Councilmembers voting for or against. The Record also shall include the names of any member not casting a vote by reason of being absent from the room at the time of the vote.

      c.      If a Councilmember has declared a Conflict of Interest, the Town Clerk shall include a statement such as "Abstained due to declared Conflict of Interest" in the official minutes as part of the results of the vote.

      d.      If the roll call method of voting is used, the Town Clerk or designee shall call the names of ~~all~~ members in random order with each new vote concluding

the vote with the Vice Mayor and Mayor respectively. Members shall respond ''Aye'' or ''Nay."

    2.    Failure to Vote:

        a.    All Councilmembers in attendance at a duly called meeting that requires formal Council action are required to vote. A member may abstain from voting only if he/she has a conflict of interest under State law, in which case such member shall take no part in the deliberations on the matter in question.

        b.    Should a Councilmember fail to vote or offer a voluntary abstention, his/her vote shall be counted with the majority of votes cast, unless the Councilmember's vote is excused by the State law; however, in the event of a tie vote, his/her vote shall be counted as "Aye.''

    3.    Reconsideration: Any Councilmember who voted with the majority may move a reconsideration of any action at the same or next regular meeting. To ensure that the open meeting law requirements are met, a written request from such Councilmember must be submitted to the Town Clerk's Office at least nine days prior to the next regular meeting. After a motion for reconsideration has once been acted upon, no other motion for reconsideration thereof shall be made without the unanimous consent of the Council.

    4.    The affirmative vote of a majority of a quorum shall be required for passage of any matter before the Council.

## SECTION 7. CONFLICT OF INTEREST

### 7.1    INTRODUCTION

Occasionally, a Councilmember may find himself/herself in a situation that requires a Councilmember remove himself/herself from participation in discussion and voting on a matter before the Council. This situation exists when the Councilmember has a "conflict of interest" as defined by the Arizona Conflict of Interest Law. This law establishes minimum standards for the conduct of public officers and employees who, in their official capacity, are, or may become involved with, a decision, which might unduly affect their personal interests or those of their close relatives.

### 7.2    PURPOSE OF CONFLICT OF INTEREST LAWS

The purpose of Arizona's Conflict of Interest Law is to prevent self-dealing by public officials and to remove or limit any improper influence, direct or indirect, which might bear on an official's decision, as well as to discourage deliberate dishonesty.

**7.3    APPLICABILITY OF THE ARIZONA CONFLICT OF INTEREST LAW**

The Arizona Conflict of Interest Law as now set forth or as amended in the future, applies to all actions taken by Councilmembers, Board members, Commissioners, and Committee members.

**7.4    DISCLOSURE OF INTEREST**

Any Councilmember, Board member, Commissioner, or Committee member who may have a conflict of interest should seek the opinion of the Town Attorney as to whether a conflict exists under the State law.  Any member who has a conflict of interest in any decision must disclose that interest at the meeting and in writing on a form provided by the Town Clerk. The disclosure of the conflict shall include a statement that the member withdraws from further participation regarding the matter. The Town Clerk or designee shall maintain for public inspection all documents necessary to memorialize all disclosures of a conflict of interest by a member.

**7.5    WITHDRAWAL FROM PARTICIPATION**

Having disclosed the conflict of interest and withdrawn in the matter, the Councilmember, Board member, Commissioner, or Committee member must not communicate about the matter with anyone involved in the decision making process in any manner.  Further, the member should not otherwise attempt to influence the decision and should remove himself/herself from the Council Chamber, or other location where a meeting is being held, while the matter is considered. Failure to disclose any conflict of interest is addressed in Section 7.8 below.

**7.6    RULE OF IMPOSSIBILITY**

In the unlikely situation that the majority of Councilmembers, Board members, Commissioners, or Committee members have a conflict of interest and the Council, Board, Commission or Committee is unable to act in its official capacity, members may participate in the discussion and decision after making known their conflicts of interest in the official records.

**7.7    IMPROPER USE OF OFFICE FOR PERSONAL GAIN**

Public officers and employees are prohibited from using or attempting to use their official positions to secure valuable things or benefits for themselves, unless such benefits are (A) part of the compensation they would normally be entitled to for performing their duties or (B) otherwise permitted according to State Law.

**7.8    SANCTIONS FOR VIOLATIONS**

Violations of the conflict of interest provisions set forth herein shall be punished as provided for in State law.

7.9     NON-STATUTORY CONFLICTS OF INTEREST

Occasionally, a Councilmember, Board member, Commissioner, or Committee member may feel that he/she should ethically refrain from participation in a decision even though the circumstances may not amount to a conflict of interest under the State law described above. It is the policy of the Council to encourage members to adhere to strongly held ethical values, which are exercised in good faith. However, subsection 6.6(E) (2) above encourages participation in the decision-making process unless the matter involves a statutory conflict of interest set forth by State law.

## SECTION 8. CODE OF ETHICS

PREAMBLE:

The citizens of Fountain Hills are entitled to have a fair, ethical, and accountable government, which has earned the public's full confidence. In keeping with the Town of Fountain Hills commitment to the effective functioning of government, public officials, both elected and appointed, shall comply with both the letter and spirit of the laws and policies affecting the operations of government; be independent, impartial and fair in their judgment and actions and use their office for the public good and not for personal gain.

The purpose of this policy for the Town is to ensure the quality of the Town Government through ethical principles that shall govern the conduct of the Council and members of the Town's Boards, Commissions, and Committees.

In furtherance of this purpose, we shall:

8.1     OBEY THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA, THE CONSTITUTION, AND LAWS OF THE STATE OF ARIZONA AND THE LAWS OF THE TOWN OF FOUNTAIN HILLS. WORK TO ENACT AND ENFORCE LAWS THAT PROMOTE THE WELL-BEING OF OUR COMMUNITY.

8.2     BE DEDICATED TO THE CONCEPTS OF EFFECTIVE AND DEMOCRATIC LOCAL GOVERNMENT THROUGH DEMOCRATIC LEADERSHIP.

We shall honor and respect the principles and spirit of representative democracy and shall set a positive example of good citizenship by scrupulously observing the letter and spirit of laws, rules, and regulations.

We shall base our decisions on the merits and substance of the matter at hand. We shall publicly share substantive information that is relevant to a matter under consideration by the Council or Boards and Commissions, which we may have received from sources outside of the public decision-making process, with the exception of confidential or privileged information

which should remain as such.

**8.3**     **AFFIRM THE DIGNITY AND WORTH OF THE SERVICES RENDERED BY THE TOWN GOVERNMENT AND MAINTAIN A DEEP SENSE OF SOCIAL RESPONSIBILITY AS A TRUSTED PUBLIC SERVANT**.

**8.4**     **BE DEDICATED TO THE HIGHEST IDEALS OF HONOR, ETHICS, AND INTEGRITY IN ALL PUBLIC AND PERSONAL RELATIONSHIPS.**

   A.     <u>Public Confidence.</u>  We shall conduct ourselves so as to maintain public confidence in Town government and in the performance of the public trust. We recognize our responsibility, when serving in our official capacity, and will practice the following:
- Engage in constructive conversations and debates that encourage the exchange of ideas while avoiding personal attacks or derogatory language.
- Refrain from making verbal attacks upon the character or motives of other members of the Council, Boards, Commissions, the staff, or the public.
- Refrain from making disparaging remarks about the other members of the Council, Boards, Commissions, the staff, or the public.

B.     <u>Impression of Influence.</u>   We shall conduct our official and personal affairs in such a manner as to give a clear impression that we cannot be improperly influenced in the performance of our official duties.

C.     <u>Advocacy</u>. We shall represent the official policies or positions of the Town Council, Board, or Commission to the best of our ability when designated as delegates for this purpose. When presenting our own individual opinions and positions to the public, the media, or other stakeholders. We shall state they do not represent the Council or the town of Fountain Hills nor imply that they do.

**8.5**     **RECOGNIZE THAT THE CHIEF FUNCTION OF LOCAL GOVERNMENT IS AT ALL TIMES TO SERVE THE BEST INTERESTS OF ALL THE PEOPLE.**

   We shall treat our office as a public trust, only using the power and resources of public office to advance public interests and not to attain personal benefit or pursue any other private interest incompatible with the public good. Our decisions and actions will be guided by the best interests of the community we serve.

   We have a public forum to show how individuals with disparate points of view can find common ground and seek a compromise that benefits the community as a whole. We will use this public forum in the most effective and beneficial manner.

**8.6**     **KEEP THE COMMUNITY INFORMED ON MUNICIPAL AFFAIRS; ENCOURAGE COMMUNICATION BETWEEN THE CITIZENS AND ALL MUNICIPAL OFFICERS; EMPHASIZE FRIENDLY AND COURTEOUS SERVICE TO THE PUBLIC; AND SEEK TO IMPROVE THE QUALITY AND IMAGE OF PUBLIC SERVICE.**

A.      Accountability. We shall ensure that government is conducted openly, efficiently, equitably, honorably, and in a manner that permits the citizens to become fully informed to allow them to hold Town officials accountable.

B.      Respectability. We shall safeguard public confidence in the integrity of Town government by being honest, fair, caring, and respectful, and by avoiding conduct creating the unexplainable appearance of impropriety, or impropriety of which is otherwise unbefitting a public official.

**8.7     SEEK NO FAVOR; BELIEVE THAT PERSONAL BENEFIT OR PROFIT SECURED BY CONFIDENTIAL OR PRIVILEGED INFORMATION OR BY MISUSE OF PUBLIC TIME IS DISHONEST.**

A.      Private Employment. We shall take any steps necessary to ensure that we comply with the State law regarding conflicts of interest when we engage in, solicit, negotiate for, or promise to accept private employment or render services for private interests or conduct a private business.

B.      Confidential Information. We shall not disclose to others, or use to further our personal interest, confidential information acquired in the course of our official duties.

C.      Gifts. We shall not directly or indirectly, in connection with service to the Town, solicit any gift or accept or receive any gift - of any value - whether it be money, services, loan, travel, entertainment, hospitality, promise, or any other form of gratuity. This policy shall not apply to hospitality, transportation or other assistance provided to Town officials when such hospitality, transportation or other assistance is (i) directly related to their participation in community events as a representative of the Town or (ii) of inconsequential value and accepted as a courtesy.

D.      Investment in conflict with official duties. We shall not invest or hold any investment, directly or indirectly, in any financial business, commercial or other private transaction that creates a conflict with our official duties.

E.      Personal relationships. Personal relationships shall be disclosed in any instance where there could be the appearance of conflict of interest or a conflict of interest.

**8.8     CONDUCT BUSINESS OF THE TOWN IN A MANNER, WHICH IS NOT ONLY FAIR IN FACT, BUT ALSO FAIR IN APPEARANCE.**

**8.9     PROMOTE UNDERSTANDING, MUTUAL RESPECT AND TRUST AMONG MEMBERS OF COUNCIL, BOARDS, COMMISSIONS AND COMMITTEES CONCERNING THEIR ROLES AND RESPONSIBILITIES WITH RESPECT TO TOWN STAFF'S RESPONSIBILITY FOR IMPLEMENTING THE COUNCIL'S POLICIES.**

**8.10    COMPLIANCE AND ENFORCEMENT**

Any person(s) who believes a council member, Board, or Commissioner has violated the Code of Ethics outlined in Section 8 of The Rules of Procedure may file a complaint. To file a complaint, a person(s) must request the complaint form from the Town Clerk and file the complaint within 90 days of the alleged occurrence or discovery of the alleged occurrence. See Section 10 of the Rules of Procedure.

All members of the Council, boards, commissions, or committees shall acknowledge in writing, on a form provided by the Town Clerk, receipt of these provisions relating to ethics.

## SECTION 9. BOARDS, COMMISSIONS, AND COMMITTEES

The Fountain Hills' Council may create such boards, commissions, and committees as deemed necessary to assist in the conduct of the operation of Town government. The Council may authorize and direct the Town Manager to establish ad hoc committees as needed in order to provide additional flexibility with regard to conducting Town business.

### 9.1    REGULARLY SCHEDULED OR UNSCHEDULED BOARDS, COMMISSIONS AND COMMITTEES

A.      Classification. All boards, commissions, and committees of the Town shall be classified as regularly scheduled or unscheduled boards, commissions, and committees. Regularly scheduled boards, commissions, and committees are those that meet on a regularly-scheduled basis or may be quasi-judicial in nature. Unscheduled boards, commissions, and committees meet on an as-called basis.

B.      Regularly Scheduled. Regularly scheduled boards, commissions, and committees include:

1.    Planning and Zoning Commission

2.    Community Services Advisory Commission

3.    McDowell Mountain Preservation Commission

4.    Strategic Planning Advisory Commission

5.    Sister Cities Advisory Commission

6.    Municipal Property Corporation

7.    Historic and Cultural Advisory Commission

C.      Unscheduled. Unscheduled boards, commissions, and committees:

      1.      Ad Hoc Committees

      2.      Board of Adjustment

D.      <u>Sunset.</u> Except for the Planning and Zoning Commission and Board of Adjustment, any board, commission, or committee created shall cease to exist (1) upon the accomplishment of the special purpose for which it was created or (2) when abolished by a majority vote of the Council.

**9.2      SELECTION OF BOARD, COMMISSION, OR COMMITTEE MEMBERS**

A.      <u>Call for Applications</u>. The call for applications to fill vacant seats for boards, commissions and committees may include a request for:

      1.      The application that describes the applicant's skills, experience, and **educational background** needed to ensure the successful filling of the vacancy. Applicants may submit a **resume along with the application; however, not in lieu of filling out the application.**

      2.      Responses to the supplemental questionnaire specific to a board, commission, or committee application, if such questionnaire is included.

      3.      The consent to executive session form.

      4.      If a member whose term will be expiring wishes to reapply for an additional term on the same board, commission or committee, such member is exempt from filing those items listed in Subsections 9.2 (A)(1~~4~~2). However, such member shall submit in writing, on a form provided by the Town Clerk that includes a request for the Council's consideration of reappointment in addition to the consent to executive session as listed in Subsection 9.2(A)(5). The member may include any new or additional information that is relevant to the original application already on file.

B.      <u>Advertising/Timing and Location</u>. The Town Clerk shall be responsible for advertising to fill vacant seats to boards, commissions, and committees for at least <u>two weeks and no later than two months,</u> prior to the expiration of the current board, commission, or committee member(s) term, via:

      1.      The Town's government access channel.

      2.      Newspaper advertising.

      3.      The Town website.

      4.      The Town's official posting sites as listed in Section 2-4-3 of the Fountain Hills

Town Code. The downloadable application packet will be placed on the Town's website for public access with hard copies made available to the public through the Customer Service Representative.

C.      Advertisement Contents. Advertisement of vacancies shall include the following:

1.      The name of the board, commission, or committee.

2.      The number of vacancies to be filled.

3.      A brief description of the board, commission, or committee.

4.      A brief description of the qualifications, skills and experience background applicants should possess, if any.

5.      An overview of when the board, commission, or committee meets.

6.      The deadline for submitting applications.

7.      Listing of applicant information required and location where application packets may be obtained.

8.      Staff liaison contact information.

9.      The dates of publication in the local paper.

D.      Staff Review. Individuals applying for boards, commissions, or committees must submit to the Town Clerk those items as listed in Subsection 9.2(A) above by the published deadline. The Town Clerk and Staff Liaison will review the application(s) to ensure that the applicant(s) meet the qualifications as listed in Subsection 9.4(A) below.

E.      Council Materials. The staff liaison to the board, commission, or committee will assemble and copy all application packets and provide all supporting materials to all Councilmembers.

F.      Subcommittee Review/Interview. The Council subcommittee shall interview all applicants, unless there are more than five applicants for each vacancy, in which case the subcommittee may choose, at its discretion, to limit the number of interviewed applicants to five per vacancy after meeting to review all of the applications. The staff liaison will schedule an appropriate time to interview qualified applicants in person or via telephone, and shall prepare and post the agenda for an executive session in accordance with the Arizona open meeting law for said interviews. Interviews shall be conducted in Executive Session unless the applicant requests the interview be held at a public meeting.

**Page 27**

G.  Subcommittee Recommendation. After the interviews have concluded, the staff liaison, Town Clerk or the Council Subcommittee chair shall advise the Mayor of the subcommittee's discussion and appointment recommendation(s).

H.  Council Consideration. The Town Clerk shall prepare the Staff Report according to the submission deadline for the next appropriate Council meeting agenda, including the following information: (1) a review of the steps taken to recruit applicants, (2) the number of vacancies to be filled along with the names of those members whose terms expire, (3) the number of applications received and (4) the specific term to be filled.

I.  Notification of Council Meeting. The staff liaison shall notify the appointee(s) that he/she is a possible candidate for appointment to a board, commission, or committee and suggest that he/she may want to be present at the scheduled meeting when the recommendation is presented to the Council.

J.  Notification of Council Action. Following the Council's approval of the Mayor's appointment(s) to a board, commission, or committee, the Town Clerk shall notify appointees as to their appointment and provide them with an Oath of Office, Ethics Policy and Open Meeting Law Affirmation for their signature and return. Those applicants not chosen to fill a vacancy on a board, commission, or committee, will be provided written notification by the Town Clerk outlining the Council's appointments and they will be provided with an application of interest for consideration of applying for any other board, commission and committee vacancies.

K.  Appointee Orientation. The staff liaison will provide specific details to the new appointees relative to: (1) their attendance at the ''official'' board, commission, or committee orientation, and (2) all official literature, agendas, minutes, or other materials specific to their appointment.

**9.3   RECOMMENDATIONS FOR APPOINTMENTS TO BOARDS, COMMISSIONS AND COMMITTEES**

A.  Appointments Subcommittee. The Mayor may annually appoint Council Subcommittees for board, commission and committee appointments. Each subcommittee shall be made up of three Councilmembers. The Mayor may appoint himself/herself to this subcommittee. If no such subcommittee is appointed, at a minimum, a quorum of the Fountain Hills Council shall review applications and conduct interviews for the various boards, commissions, and committees to fill vacancies based upon the applicants' skills, experience, and background as required under Section 9.4 below.

B.  Subcommittee Purpose. The purpose of this Council Subcommittee is to review applications, interview applicants (typically in Executive Session) and provide a recommendation to the Mayor for possible appointment to fill vacancies based upon the applicants' skills, experience, and background as required under Section 9.4 below.

C.  Appointment Timing. The process of application review and interviews will be conducted in

such a manner as to allow for the appointments to coincide with the term expiration of the current board, commission or committee member(s) term or as soon thereafter as reasonably possible.

**9.4      QUALIFICATIONS FOR APPOINTMENTS; EMPLOYEES OR APPOINTED OFFICERS AS MEMBERS**

A.      Minimum Qualifications. All members of boards, commissions, and committees shall meet the following minimum qualifications upon their appointment to any board, commission, or committee.  Each member must be:

  1.      Eighteen years of age or older, for any board, commission, or committee seats, designated by Council; except for members appointed to Youth Commissioner position for youth representation.

  2.      A Fountain Hills resident for at least one year, unless the Council specifically waives this time or residency requirement for a specific board, commission or committee.

  3.      A qualified elector, except for youth appointees.

B.      Prohibited Appointees. Town employees or appointed officers shall not be eligible for appointment to any board, commission, or committee but may be requested to provide staff support thereto.  Councilmembers are prohibited from serving on regularly scheduled commissions as listed in Subsection 9.1(B) above and the Board of Adjustment.

C.      Ex-Officio Members. The Mayor, with the consent of the Council, may from time to time appoint ex-officio members to those boards, commissions or committees as set forth in the bylaws of such body. Such members shall serve at the pleasure of the Mayor and Council. Ex-officio members shall not be entitled to vote on any matter brought before the commission.

**9.5      TERMS, VACANCIES, REMOVAL**

A .      Terms.  All members of unscheduled boards, commissions, and committees shall serve a term of up to three years, or until the board, commission, or committee is dissolved, unless Council action, Town Code, or Arizona Revised Statutes specifically designates terms.

B.      Staggered Terms for Smaller Boards. For those regularly scheduled boards, commissions, and committees having five members or fewer, the terms of office shall be staggered so that no more than two terms shall expire in any single year when possible; provided, however, that no staggering of terms shall be required for any boards, commission, or committee that will be in existence for a single term.

C       Staggered Terms  for Larger Boards. For those boards, commissions, and committees having

**Page 29**

more than five members but less than eight members, the terms of office shall be staggered so that no more than three terms shall expire in any single year when possible; provided, however, that no staggering of terms shall be required for any board, commission, or committee that will be in existence for a single term.

D.      Simultaneous Service Limitation. No individual may serve as a voting member on more than one regularly scheduled or unscheduled board, commission, and committee at one time.

E.      Vacancies. A vacancy on a board, commission, or committee shall be deemed to have occurred upon the following:

1.      Death or resignation of a member of a board, commission, or committee.

2.      A member ceasing to be a resident of the Town of Fountain Hills, unless the Council has provided that such member may be a non-resident.

3.      Three successive unexcused or unexplained absences by a member from any regular or special board, commission, or committee meetings. However, the term of all members shall extend until their successors are appointed and qualified.

F.      Removal. Any board, commission, or committee member may be removed as a member to that board, commission, or in accordance with Article 2A-1 of the Fountain Hills Town Code.

G.      Filling Vacancy. Whenever a vacancy has occurred on one board, commission, or committee procedures described in Sections 9.2, 9.3, and 9.4 above will be used to generate applicants, interview applicants, and make a recommendation for a potential appointee. One exception to this rule is that if a vacancy should occur within twelve months of a subcommittee's interviewing process for said board/commission/committee, and the subcommittee had submitted a ranking of those previously interviewed, a recommendation may be forwarded to the mayor for appointment of the unexpired term based on said ranking.

H.      Re-appointment. An incumbent member of a board, commission, or committee seeking reappointment shall submit, in writing on a form provided by the Town Clerk that includes a request for the Council's consideration of reappointment in addition to the consent to executive session form by the published deadline in order to be considered for appointment by the Council. The member may include anyone or additional information that is relevant to the original application already on file.

**9.6     APPLICABILITY OF THE ARIZONA OPEN MEETING LAW**

All boards, commissions, and committees are subject to the Arizona Open Meeting Law and therefore shall attend the Town's Annual Open Meeting Law training.

**Page 30**

**9.7      RESIDENCY REQUIREMENT**

Members of all boards, commissions or committees shall be residents of the Town.

**SECTION 10 – CODE OF ETHICS - COMPLAINT PROCEDURE**

<u>MEMBERS OF THE PUBLIC</u>

Any person who believes a Council Member, Board, or Commissioner has violated the Code of Ethics outlined in Section 8 of the Rules of Procedure may file a complaint. To file a complaint, a person(s) must request the complaint form from the Town Clerk and file the complaint within 90 days of the alleged occurrence or discovery of the alleged occurrence.

**10.1      THE COMPLAINT FORM SHALL CONTAIN THE FOLLOWING INFORMATION:**

- The complainant's name, address, email, and telephone number.
- The name of the person who is the subject of the complaint.
- The nature of the alleged violation, identifying the specific provision of the ethics they allegedly violated.
- Statement of facts, including dates and any witnesses with contact information to the alleged violation.

**10.2      INITIAL SCREENING PROCESS**

Complaints must be filed with the Town Clerk. The Town Clerk will review each complaint for completeness and administer a date stamp. Reasons a complaint may be returned:

- Incomplete
- Untimely

If the form is complete, the Town Clerk will forward the complaint to the Town Attorney for initial screening. The Town Attorney will determine if the alleged violation does fall under the Code of Ethics. If the Town Attorney determines that the complaint on its face may violate the Code of Ethics, it will be forwarded to outside counsel for review and the appropriate council member(s) will be notified.

**10.4      OUTSIDE COUNSEL REVIEW**

Each complaint received by outside counsel will be reviewed based on the merits of the complaint. outside counsel has the authority to conduct an investigation or make a determination based on the information provided.

If counsel determines that interviews are needed, the complainant and respondent will be interviewed, and in the discretion of counsel, all witnesses listed.

Once the review/investigation is concluded, outside counsel will provide the Town Attorney with a determination whether the complaint is sustained or not sustained. If the complaint is sustained, the Town Attorney will schedule an Executive Session for review and enforcement by the Town Council. If the complaint is not sustained, the Town Attorney will notify the Town Clerk, who will notify all parties involved in the complaint of the outcome.

All determinations by outside counsel are final and no appeals will be accepted.

In the case of an ethics complaint being filed and forwarded to outside counsel for review, outside counsel shall make a determination whether the complaint has merit or is without merit and deemed frivolous. If deemed without merit or frivolous, the petitioner shall agree to pay the legal expenses associated with the claim.

False or frivolous complaints. A person who knowingly makes a false, misleading, or unsubstantiated statement in a complaint is subject to criminal prosecution for perjury and potential civil liability for, among other possible causes of action, defamation. If after reviewing an ethics complaint it is determined that a sworn complaint is groundless and appears to have been filed in bad faith or for the purpose of harassment, or that intentionally false or malicious information has been provided under penalty of perjury, then the Town Attorney may refer the matter to the appropriate law enforcement authority for possible prosecution. A town official who seeks to take civil action regarding any such complaint shall do so at his or her expense.

## 10.5   ENFORCEMENT

All sustained complaints will be brought forth to the Town Council for appropriate action. The Council may impose sanctions on members whose conduct does not comply with the Code of Ethics based on the circumstances of the infraction, those sanctions are as follows:

- The Council, by a majority vote, can direct a statement to be retracted.
- The Council, by a majority vote, can direct an apology to be offered.
- The Council, by a majority vote, can choose to take no action.
- The Council, by a majority vote, can censure a member who fails to uphold the standards outlined in the Code of Ethics.
- The Council, by a majority vote, can suspend the offending council member from a future council meeting OR
- Impose any other sanction in accordance with state law.

# EXHIBIT 2



1115 E. Cottonwood Lane, Suite 150
Casa Grande, Arizona 85122
520.426.3824 • fitzgibbonslaw.com

**Tina L. Vannucci**
DIRECT (520) 381-9982
tina@fitzgibbonslaw.com

February 20, 2024

**VIA E-MAIL ONLY**
Aaron@piercecoleman.com

Town of Fountain Hills
Attn:  Aaron Arnson
16705 E. Avenue of the Fountains
Fountain Hills, AZ   85268

> ### *Re: Ethics Complaints Investigation Report*
> ### *Vice Mayor Grzybowski against Councilman Skillicorn*

Dear Mr. Arnson:

The Town of Fountain Hills (the "Town") retained Fitzgibbons Law Offices, PLC to investigate potential violations of the Town's Rules of Procedures ("Code of Ethics") by Councilman Allen Skillicorn ("Councilman Skillicorn"). The complaint filed by Vice Mayor Grzybowski generally allege that Councilman Skillicorn violated the Town's Code of Ethics during the January 17, 2024 Town Council meeting (the "Complaint").[1]

Based on my investigation, as more specifically set forth below, I believe legal sufficiency exists regarding a violation of the Town's Code of Ethics by Councilman Skillicorn.

### ALLEGATIONS OF VIOLATION OF CODE OF ETHICS

The Complaint alleges that Councilman Skillicorn violated the Code of Ethics when he made certain statements during the January 17, 2024 Town Council meeting.

After reviewing the alleged violations of the Code of Ethics, the Town Manager and Town Attorney determined outside Counsel should investigate these allegations.

### THE CODE OF ETHICS

The Town Council adopted Rules of Procedure, the current version of which was effective on September 6, 2023.[2]  The Complaint specifically mentions the below rules, which are set forth in Section 8 related to the Code of Ethics.

---

1 A copy of the January 22, 2024 complaint filed by Vice Mayor Grzybowski is on file with the Town of Fountain Hills
2 A copy of the Rules of Procedure is on file with the Town of Fountain Hills.

{00286167}

Town of Fountain Hills
February 20, 2024
Page | 2

Section 8.4 states that Council shall "be dedicated to the highest ideals of honor, ethics, and integrity in all public and personal relationships." Section 8.4(A) further states that Council shall "conduct [themselves] so as to maintain public confidence in Town government and in the performance of the public trust" and will do the following when serving in their official capacity:

- "Engage in constructive conversations and debates that encourage the exchange of ideas while avoiding personal attacks or derogatory language.
- Refrain from making verbal attacks upon the character or motives of other members of the Council, Boards, Commission, the staff, or the public.
- Refrain from making disparaging remarks about other members of the Council, Boards, Commissions, the staff, or the public."

Section 8.6(B) provides that Council "shall safeguard public confidence in the integrity of Town government by being honest, fair, caring, and respectful, and by avoiding conduct creating the unexplainable appearance of impropriety, or impropriety of which is otherwise unbefitting a public official."

## REVIEW OF CONDUCT IN CONTEXT WITH THE CODE OF ETHICS

A.    *January 17, 2024 Meeting*

Prior to the agenda item, Councilman Skillicorn asks for a point of order to clarify whether the upcoming item on the agenda was legislative or quasi-judicial. The Town Attorney clarifies that the site-specific matter is a legislative matter. Councilman Skillicorn goes on to state that he wants to make sure the hearings are fair and part of his curiosity is whether members of Council have had ex parte communications with the developer or have taken campaign contributions from them and need to recuse themselves. The Town Attorney clarifies that the Town Council has been provided instructions regarding conflicts of interest and they know how to disclose it and declare a conflict if it exists.

During the discussion of the agenda item, Councilman Skillicorn states that he is concerned or curious about whether any members of council have been lobbied or had ex-parte communications with the developer. The Mayor asks if Councilman Skillicorn has an accusation to make and he responds saying he is just curious and he thinks the public has the right to know about any communications with the developer. Councilman Skillicorn asks to go down the row of Council members but the Mayor states they are not doing that. Councilman Skillicorn then asks if she is "going to refuse the public from seeing this" and asks if anyone has taken campaign cash from the developer to which the Mayor responds "oh my gosh."

Councilman Skillicorn than notes they are rushing this through, "process be damned" without answering these types of questions. Councilman Skillicorn says they are having no transparency here and asks if this is the process they want in this town.

{00286167}

Town of Fountain Hills
February 20, 2024
Page | 3

At this point, Council McMahon objects to his "vulgar accusations" and tells him they are inappropriate and he has no proof that she knows of and it is no longer a hearing. Councilman McMahon again reiterates this is inappropriate and asks him not to continue. Councilman Skillicorn then asks if that is Councilwoman McMahon's way of saying she is against transparency.

The Town Attorney then states he understands Councilman Skillicorn's question and it seems like Councilmember Skillicorn has made his point and it seems like the Council is not going to entertain the discussion and suggests to the Mayor that the Council move on.

Councilman Skillicorn indicated that there were rumors of people talking to developers so he wanted to ask the question. He noted that he didn't accuse anyone specifically and no one answered. Councilman Skillicorn also motioned to go into e-session so they could potentially speak about the matter in confidence, but the motion did not receive a second.

## FINDINGS AND CONCLUSIONS

The U.S. Supreme Court addressed First Amendment restrictions on elected officials in *Nevada Commission on Ethics v. Carrigan*, 131 S.Ct. 2343 (2011). Although the Carrigan case involved the mandatory recusal obligation of a public official, which is not at issue here, the language used by the U.S. Supreme Court is instructive when applying the Code of Ethics to the Town of Fountain Hills. The Supreme Court observed that "[t]his Court has rejected the notion that the First Amendment confers a right to use government mechanics to convey a message." *Id.* at 2351. In addition, the Supreme Court expressly noted that "a legislator has no right to use official power for expressive purposes." *Id.* The opinion set forth in *Carrigan* appears consistent with the more recent cases in lower courts, such as *Garnier v. Ratcliff*, 41 F. 4th 1158 (9th Cir. 2022) and *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022), which distinguish the application of the First Amendment protections based on whether a social media account is used in an official capacity or in a personal capacity. Based on *Carrigan*, the Town of Fountain Hills should be allowed to enforce the reasonable time, place and manner restrictions set forth in the Code of Ethics on public speech.

Although Councilman Skillicorn does not name any Council members specifically or provide any details, his verbal comments during the January 17, 2024 Council meeting brings into question the character and motives of other members of Council related to the project before them for approval. Councilman Skillicorn implies that members of Council have had inappropriate conversations with the developer and/or taken campaign contributions from the developer and, therefore, the process related to this development is unfair and not transparent. These comments are in violation of Section 8.4(A) which requires members of Council to refrain from "verbal attacks upon the character or motives of other members of Council" and of Section 8.6(B) which requires members to avoid "conduct creating the unexplainable appearance of impropriety, or impropriety of which is otherwise unbefitting a public official."

{00286167}

Town of Fountain Hills
February 20, 2024
Page | 4

      Please let me know if you have any questions or need any additional information related to this investigation.

      Thank you very much.

                 Sincerely,

                 **FITZGIBBONS LAW OFFICES, P.L.C.**

                 Tina L. Vannucci

# EXHIBIT 3



1115 E. Cottonwood Lane, Suite 150
Casa Grande, Arizona 85122
520.426.3824 • fitzgibbonslaw.com

**Tina L. Vannucci**
DIRECT (520) 381-9982
tina@fitzgibbonslaw.com

February 20, 2024

**VIA E-MAIL ONLY**
Aaron@piercecoleman.com

Town of Fountain Hills
Attn: Aaron Arnson
16705 E. Avenue of the Fountains
Fountain Hills, AZ  85268

> ### *Re: Ethics Complaints Investigation Report*
> ### *Vice Mayor Grzybowski against Councilman Skillicorn*

Dear Mr. Arnson:

The Town of Fountain Hills (the "Town") retained Fitzgibbons Law Offices, PLC to investigate potential violations of the Town's Rules of Procedures ("Code of Ethics") by Councilman Allen Skillicorn ("Councilman Skillicorn"). The complaint filed by Vice Mayor Grzybowski generally allege that Councilman Skillicorn violated the Town's Code of Ethics during the January 17, 2024 Town Council meeting (the "Complaint").[1]

Based on my investigation, as more specifically set forth below, I believe legal sufficiency exists regarding a violation of the Town's Code of Ethics by Councilman Skillicorn.

### ALLEGATIONS OF VIOLATION OF CODE OF ETHICS

The Complaint alleges that Councilman Skillicorn violated the Code of Ethics when he made certain statements during the January 17, 2024 Town Council meeting.

After reviewing the alleged violations of the Code of Ethics, the Town Manager and Town Attorney determined outside Counsel should investigate these allegations.

### THE CODE OF ETHICS

The Town Council adopted Rules of Procedure, the current version of which was effective on September 6, 2023.[2]  The Complaint specifically mentions the below rules, which are set forth in Section 8 related to the Code of Ethics.

---

1 A copy of the January 22, 2024 complaint filed by Vice Mayor Grzybowski is on file with the Town of Fountain Hills
2 A copy of the Rules of Procedure is on file with the Town of Fountain Hills.

{00286167}

Town of Fountain Hills
February 20, 2024
Page | 2

Section 8.4 states that Council shall "be dedicated to the highest ideals of honor, ethics, and integrity in all public and personal relationships." Section 8.4(A) further states that Council shall "conduct [themselves] so as to maintain public confidence in Town government and in the performance of the public trust" and will do the following when serving in their official capacity:

- "Engage in constructive conversations and debates that encourage the exchange of ideas while avoiding personal attacks or derogatory language.
- Refrain from making verbal attacks upon the character or motives of other members of the Council, Boards, Commission, the staff, or the public.
- Refrain from making disparaging remarks about other members of the Council, Boards, Commissions, the staff, or the public."

Section 8.6(B) provides that Council "shall safeguard public confidence in the integrity of Town government by being honest, fair, caring, and respectful, and by avoiding conduct creating the unexplainable appearance of impropriety, or impropriety of which is otherwise unbefitting a public official."

**<u>REVIEW OF CONDUCT IN CONTEXT WITH THE CODE OF ETHICS</u>**

A.    *<u>January 17, 2024 Meeting</u>*

Prior to the agenda item, Councilman Skillicorn asks for a point of order to clarify whether the upcoming item on the agenda was legislative or quasi-judicial. The Town Attorney clarifies that the site-specific matter is a legislative matter. Councilman Skillicorn goes on to state that he wants to make sure the hearings are fair and part of his curiosity is whether members of Council have had ex parte communications with the developer or have taken campaign contributions from them and need to recuse themselves. The Town Attorney clarifies that the Town Council has been provided instructions regarding conflicts of interest and they know how to disclose it and declare a conflict if it exists.

During the discussion of the agenda item, Councilman Skillicorn states that he is concerned or curious about whether any members of council have been lobbied or had ex-parte communications with the developer. The Mayor asks if Councilman Skillicorn has an accusation to make and he responds saying he is just curious and he thinks the public has the right to know about any communications with the developer. Councilman Skillicorn asks to go down the row of Council members but the Mayor states they are not doing that. Councilman Skillicorn then asks if she is "going to refuse the public from seeing this" and asks if anyone has taken campaign cash from the developer to which the Mayor responds "oh my gosh."

Councilman Skillicorn than notes they are rushing this through, "process be damned" without answering these types of questions. Councilman Skillicorn says they are having no transparency here and asks if this is the process they want in this town.

{00286167}

Town of Fountain Hills
February 20, 2024
Page | 3

At this point, Council McMahon objects to his "vulgar accusations" and tells him they are inappropriate and he has no proof that she knows of and it is no longer a hearing. Councilman McMahon again reiterates this is inappropriate and asks him not to continue. Councilman Skillicorn then asks if that is Councilwoman McMahon's way of saying she is against transparency.

The Town Attorney then states he understands Councilman Skillicorn's question and it seems like Councilmember Skillicorn has made his point and it seems like the Council is not going to entertain the discussion and suggests to the Mayor that the Council move on.

Councilman Skillicorn indicated that there were rumors of people talking to developers so he wanted to ask the question. He noted that he didn't accuse anyone specifically and no one answered. Councilman Skillicorn also motioned to go into e-session so they could potentially speak about the matter in confidence, but the motion did not receive a second.

## FINDINGS AND CONCLUSIONS

The U.S. Supreme Court addressed First Amendment restrictions on elected officials in *Nevada Commission on Ethics v. Carrigan*, 131 S.Ct. 2343 (2011). Although the Carrigan case involved the mandatory recusal obligation of a public official, which is not at issue here, the language used by the U.S. Supreme Court is instructive when applying the Code of Ethics to the Town of Fountain Hills. The Supreme Court observed that "[t]his Court has rejected the notion that the First Amendment confers a right to use government mechanics to convey a message." *Id.* at 2351. In addition, the Supreme Court expressly noted that "a legislator has no right to use official power for expressive purposes." *Id.* The opinion set forth in *Carrigan* appears consistent with the more recent cases in lower courts, such as *Garnier v. Ratcliff*, 41 F. 4th 1158 (9th Cir. 2022) and *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022), which distinguish the application of the First Amendment protections based on whether a social media account is used in an official capacity or in a personal capacity. Based on *Carrigan*, the Town of Fountain Hills should be allowed to enforce the reasonable time, place and manner restrictions set forth in the Code of Ethics on public speech.

Although Councilman Skillicorn does not name any Council members specifically or provide any details, his verbal comments during the January 17, 2024 Council meeting brings into question the character and motives of other members of Council related to the project before them for approval. Councilman Skillicorn implies that members of Council have had inappropriate conversations with the developer and/or taken campaign contributions from the developer and, therefore, the process related to this development is unfair and not transparent. These comments are in violation of Section 8.4(A) which requires members of Council to refrain from "verbal attacks upon the character or motives of other members of Council" and of Section 8.6(B) which requires members to avoid "conduct creating the unexplainable appearance of impropriety, or impropriety of which is otherwise unbefitting a public official."

{00286167}

Town of Fountain Hills
February 20, 2024
Page | 4


    Please let me know if you have any questions or need any additional information related
to this investigation.

    Thank you very much.



                    Sincerely,

                    **FITZGIBBONS LAW OFFICES, P.L.C.**


                    Tina L. Vannucci

# EXHIBIT 4



## PIERCE | COLEMAN

Justin S. Pierce
Stephen B. Coleman
Aaron D. Arnson
Trish Stuhan
Christina Estes-Werther
Jon M. Paladini
Joseph D. Estes

7730 E. Greenway Road, Suite 105
Scottsdale, Arizona  85260

2812 N. Norwalk, Suite 107
Mesa, Arizona  85215

Dominic L. Verstegen
Allen H. Quist
Jenny J. Winkler
Michelle N. Stinson
Alexandra N. Cayton
Matthew W. Schiumo

March 1, 2024

**MEMORANDUM**

To:    Allen Skillicorn, Town Councilmember

From:  Aaron D. Arnson
        Pierce Coleman PLLC, Town Attorney

Re:    Conflict of Interest Opinion—Consideration and Possible Action on Ethics Reports

Date:  March 1, 2024

The purpose of this memorandum is to advise regarding a conflict of interest with an agenda item that will be considered at the March 5, 2024 Council meeting. Although you have not requested an opinion, the Town Attorney's role as legal counselor is to advise regarding actual or likely conflicts of interest when they become apparent.

The item in question will appear on the March 5 agenda as Item 9.B: "Consideration and possible action: sanctions against Councilmember Allen Skillicorn for sustained ethics violations." As you are aware, Item 9.B is being considered because of affirmative findings of ethical violations in two reports prepared by outside investigator Tina Vannucci of Fitzgibbons Law Firm, PLC.

State law provides that if a public officer has "a substantial interest in any decision of a public agency," then the public officer "shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an officer… in such decision." *See* A.R.S. § 38-503(B). "'Substantial interest' means any nonspeculative pecuniary or proprietary interest, either direct or indirect, other than a remote interest." A.R.S. § 38-502(11). Failure to comply with these requirements may result in various penalties as prescribed by state law. *See* A.R.S. § 38-510.

Because Item 9.B concerns sanctions that may be imposed against you, you have a nonspeculative interest in the decision. Therefore, I conclude that you have a conflict of interest with respect to Item 9.B that requires you to disclose the interest in the official records of the Town and recuse yourself from participating as an officer in this item. You may obtain the necessary disclosure form from the Town Clerk's office prior to Tuesday, March 5.

ATTORNEY CONTACT:
Aaron D. Arnson
Direct Line: 602-772-5522
Email:  Aaron@PierceColeman.com

Tel.:  602-772-5506
Fax:  877-772-1025
Website:  www.piercecoleman.com



Allen Skillicorn
March 1, 2024
Page 2



      Please note that the decision whether to declare a conflict is ultimately yours, as the public officer. I am happy to discuss any questions and concerns that you may have.

                            Very truly yours,


                            Aaron D. Arnson
                            Pierce Coleman PLLC
                            Town Attorney

ADA

# EXHIBIT 5

*Timothy A. La Sota, PLC*
2198 E. Camelback Rd., Suite 305
Phoenix, Arizona 85016
P 602-515-2649
tim@timlasota.com

March 5, 2024

**Via electronic mail to**:

Mr. Aaron Arnson
Town Attorney
Town of Fountain Hills
aaron@piercecoleman.com

***Re:     "Ethics" complaints (political kneecapping) regarding Councilman Skillicorn***

Dear Mr. Arnson:

This law firm represents Councilman Allen Skillicorn.

I urge this Council to promptly dispense with the "ethics" complaints that have been "sustained" by lawyer Tina Vannucci ("Lawyer Vannucci"), one of which was brought by one of Councilman Skillicorn's detractors on this Council. These supposed complaints represent nothing more than a politically motivated attempt to smear Councilman Skillicorn, while trashing his constitutional rights in the process. This has already subjected the Town to liability. I urge this Council to stand down before any more damage is done to the Town, its institutions, and its esteem in the minds of the public.

In terms of these types of political hits, it is a classic good news, bad new situation. The bad news is that partisans are increasingly engaging in lawfare. That is, abusing various legal processes to try to damage their political adversaries. The good news, if it can be called that, is that such efforts have become so commonplace and obvious that the public is not fooled. The supposed charges, sustained by Lawyer Vannucci, are groundless, and the simple fact that Councilman Skillicorn is having to hire an attorney, at his own expenses, to fight these political hits gives rise to liability for violation of Councilman Skillicorn's rights. They must be dismissed.

**The First Sustained "Ethics" Complaint**

Incredibly, Lawyer Vannucci sustained a complaint against Councilman Skillicorn for

Mr. Arnson
March 5, 2024
Page -2-

comments he made at a Town Council meeting.  I cannot think of a better way to shut down the type of open discussion of the issues that the public desperately needs than for this Council to exacerbate the civil rights violations that have already been committed against Councilman Skillicorn by "sanctioning" him for what he said on rezoning matter being debated by the Council.

To begin with, Lawyer Vannucci apparently forgot all about legislative privilege.  That is, where "statements were made by a town council member at a formal council meeting during the course of that meeting….the statements are protected by an absolute immunity."  *Sanchez v. Coxon*, 175 Ariz. 93, 97 (1993).  This is for good reason.  Lawyer Vannucci's path leads to a situation where elected officials, at least ones of certain political stripes, are afraid to say anything.  In fact, this whole effort is about shutting Councilman Skillicorn up.

In addition, Councilman Skillicorn's rights under the free speech provisions of the First Amendment are being violated.  The Ninth Circuit has summed up the law on this topic, and the wide latitude given to elected officials to discuss matters of public concern, as follows:

> Restrictions on a council member's ability to attend council meetings and address matters of public concern may infringe the member's First Amendment rights. *See Bond v. Floyd,* 385 U.S. 116, 137, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966) (Georgia legislature's disqualification of elected representative on account of statements about the Vietnam war violated representative's right of free expression under First Amendment). As the Court stated in *Bond,* "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.* at 135–36, 87 S.Ct. 339. But "[t]he central commitment of the First Amendment ... is that 'debate on *public* issues should be uninhibited, robust and wide-open'.... [S]tatements criticizing public policy and the implementation of it must be ... protected." *Id.* at 136, 87 S.Ct. 339 (emphasis added) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

*DeGrassi v. City of Glendora*, 207 F.3d 636, 646 (9th Cir. 2000).

It is worth noting that the comments of the would-be legislator in the *Bond* case, Julian Bond, were made after his election but prior to his being seated as a Georgia legislator.

Mr. Arnson
March 5, 2024
Page -3-

That is, they were not even made in a legislative setting!  In contrast, Councilman Skillicorn made his comments at a Council meeting on a rezoning case!

Lawyer Vannucci attempts to use the "time, place and manner" exception to justify the attempts to squelch Councilman Skillicorn's free speech rights. Lawyer Vannucci's discussion of this issue is cursory, inaccurate, and shameful in how she so cavalierly dismissed free speech concerns.

On this topic, with seemingly never-ending case law nearly universally supporting the right to speak freely, Lawyer Vannucci discusses but three cases, none of which even remotely stand for the proposition that a governmental body may curtail an elected official's right to discuss a policy issue at an official <u>council</u> proceeding.

The United States Supreme Court decision in *Nevada Com'n on Ethics v. Carrigan* cited by Vannucci merely discussed whether a public official could be disqualified from voting on an issue on which he or she had a conflict of interest, or could be barred from advocating the failure or passage of such an item  in official legislative debate.  131 S.Ct. 2343, 2347, 564 U.S. 117, 121 (U.S. 2011)("Restrictions on legislators' voting are not restrictions on legislators' protected speech").  Clearly such a restriction is legal.  Though Councilman Skillicorn does not have an actual pecuniary interest in this matter, it is the same reason Councilman Skillicorn is not voting on this matter.  That issue has nothing to do with the attempts to squelch Councilman Skillicorn's free speech.

The Ninth Circuit case of *Garnier v. O'Connor-Ratcliff* cited by Vannucci dealt with two school board members' social media page and whether those members could restrict access to it.  41 F.4th 1158 (9th Cir. 2022).  It is ironic that Lawyer Vannucci cited this case in alleged support of sanctioning Skillicorn for his exercise of free speech given that the Ninth Circuit found the school board members' squelching of comments by individuals on a <u>social media platform</u> was a violation of the individuals' First Amendment free speech rights!  Under Vannucci's logic, comments on a social media platform sponsored by two school board members is protected, but comments by a councilmember in an open session may be stifled if it offends any other councilmember? Lawyer Vannucci's perfunctory legal analysis is clearly untenable.

The last case Vannucci cites is a Sixth Circuit opinion (not even binding law in Arizona) that finds that a personal social media page of the City Manager of Port Huron, Michigan, James Freed is not a public forum.  In that case, the Court found:

> [City Manager] James Freed didn't transform his personal Facebook page
> into official action by posting about his job. Instead, his page remains

Mr. Arnson
March 5, 2024
Page -4-

personal—and can't give rise to <u>section 1983</u> liability [based on a violation
of free speech rights under the First Amendment].

*Lindke v. Freed*, 37 F.4th 1199, 1201 (6th Cir. 2022).

Any objective reader would be left wondering what in the world that case has to do with
this case.  The answer is nothing.  Lawyer Vannucci's analysis appears to have started,
rather than ended with a conclusion.  The rationale she comes up with to try to support
her conclusion is simply not availing.

## The Second Sustained "Ethics" Complaint

The second complaint deals with a Town employee who removed a political sign under
highly question circumstances.  This was also a matter of public concern as this employee
had removed a political sign belonging to Councilman Skillicorn with a political message
urging voters to reject the bond measure, which they did.

As such, everything said above on free speech applies to this supposed complaint also—
and this Council would be invading Councilman Skillicorn's First Amendment rights if it
were to sanction him.  One additional fact is how broad and malleable the Code of Ethics
is on this point and how the malleable language of the Code of Ethics could sustain just
about any allegation against a councilmember.  And in contrast to Councilman
Skillicorn's protected Council speech, the facts in this matter are disputed.

In this supposed ethics violation, Lawyer Vannucci admits that "I am unable to
definitively determine whether any traffic laws were in fact violated…"  So in other
words, her standard seems to be that any traffic law violation amounts to an "ethics"
violation for which the Council should consider a sanction. But given that the actual
statements from the Town employee and Councilman Skillicorn cannot even support
an allegation of a traffic law violation, Lawyer Vannucci tries to paper over this
obvious deficiency in this politically motivated ethics complaint by stating that "I do
not believe that following [Town employee] Lucchese to Town Hall and flashing
headlights at him to try to get him to pull over or to try to talk sets 'a positive example
of good citizenship' as required by the Code of Ethics."  But what is a positive
example of good citizenship, and how does this language possibly give anyone
appropriate notice as to the type of behavior that might not constitute "good
citizenship" or "bad citizenship"?

Now flashing one's headlights is an "ethics" violation.  What is next, honking one's
horn?

Mr. Arnson
March 5, 2024
Page -5-


This Ethics Code is clearly deficient in terms of the notice it gives of what behavior it requires or expects.  The United States Court of Appeals for the D.C. Circuit has summed up the law on this well:

> "A fundamental principle in our legal system," the Supreme Court observed in *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012), "is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Id*. at 253, 132 S.Ct. 2307. Such "[e]lementary notions of fairness," the Court explained in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that [the government] may impose." *Id*. at 574, 116 S.Ct. 1589. "<u>This requirement of clarity[,] ... essential to the protections provided by the Due Process Clause of the Fifth Amendment,</u>" *Fox Television*, 567 U.S. at 253, 132 S.Ct. 2307, "is implicated" whenever the government imposes "civil penalties," *Gore*, 517 U.S. at 574 n.22, 116 S.Ct. 1589 (emphasis omitted). <u>Where such penalties "threaten[ ] to inhibit the exercise of constitutionally protected rights[,] ... a more stringent vagueness [and fair-notice] test should apply</u>." *665 **112 *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

*Karem v. Trump*, 960 F.3d 656, 664–65, 447 U.S.App.D.C. 103, 111–12 (D.C. Cir. 2020)(emphasis added).


Councilman Skillicorn was understandably unhappy about his political sign being removed, under questionable circumstances, and wanted an explanation.  And of course, the facts of exactly what happened are disputed.  Councilman Skillicorn flatly denied approaching anyone in an "aggressive" or improper manner, but somehow that does not make its way into Lawyer Vannucci's report.  And of course, the sole witness to this, which amounts to an allegation merely that Councilman Skillicorn approached him "aggressively" is a single person.  Even allegations of witchcraft required two witnesses!

Lawyer Vannucci also states that "[o]nce Councilman Skillicorn realized it was a Town truck he was following, he ***could*** have contacted the Town Manager to determine how to retrieve the sign and for an explanation of why it was removed." (Emphasis added).  Wrong answer.  The government is not permitted to dictate the

Mr. Arnson
March 5, 2024
Page -6-

manner in which a citizen decides to approach a government employee, and may impose know malleable "politeness" or "civility" requirement, which means different things to different people anyway.  Councilman Skillicorn took this action purely as a private citizen.  A private citizen could not conceivably be punished for a simple exercise of one's right this way.  Nor can a councilmember.  Councilmembers enjoy no fewer rights than anyone else. *DeGrassi*, 207 F.3d at 646.

## Conclusion

It is unfortunate that the Town has adopted an Ethics Code that purports to permit this Council to punish a member of their Council for not adhering to principles of "good citizenship" or for free speech that certain members of Council disapprove of.  It is also unfortunate that Lawyer Vannucci, who is being paid at Fountain Hills taxpayer expense, has been willing to sustain these obviously baseless complaints.  This whole exercise has been a mockery and complete waste of money.

But be that as it is, some things are clear.  The public is not the least bit fooled by the *modus operandi* of the political detractors of Councilman Skillicorn who would sacrifice the First Amendment and due process to try to harm Councilman Skillicorn politically.  The agenda of Councilman Skillicorn's opponents it obvious—file a series of baseless ethics complaints that invoke a wholly ambiguous Ethics Code, then run to their media comrades to write about ethics violation allegations that are "piling up."  And then convince four political opponents of Councilman Skillicorn to sanction him for these alleged violations.

The public sees through such obvious smear efforts, and understands that certain politicians, based on their viewpoints will inevitably be the target of such smear campaigns.

The first order of business for the Town is to dismiss these baseless charges.  If these allegations are sustained, it will constitute an actionable claim by Councilman Skillicorn for violation of his First and Fifth Amendment rights under Section 1983 of the United States Code.

Mr. Arnson
March 5, 2024
Page -7-

The second order of business is to amend the "Ethics" Code so that it cannot be readily used by partisans with assistance from taxpayer funded attorneys.  Please take no action on these baseless  ethics complaints.

Very truly yours,

**TIMOTHY A. LA SOTA, PLC**

Timothy A. La Sota

# EXHIBIT 6

**From:** Peggy McMahon <pmcmahon@fountainhillsaz.gov>
**Date:** March 30, 2024 at 2:41:33 PM MST
**To:** Allen Skillicorn <askillicorn@fountainhillsaz.gov>
**Cc:** Ginny Dickey <gdickey@fountainhillsaz.gov>, Peter Lucchese
<plucchese@fountainhillsaz.gov>, Aaron Arnson
<aaron@piercecoleman.com>
**Subject: Letter of Apology**


Allen Skillicorn:

Please provide me with a copy of your letter of apology to Mr. Peter Luchese,
Code Enforcement Officer.

Thank you,

**Peggy McMahon**
Council Member
Town of Fountain Hills
p: (480) 816-5100   c: (480) 452-4253
a: 16705 E. Avenue of the Fountains, Fountain Hills, AZ 85268
w: www.fh.az.gov   e: pmcmahon@fountainhillsaz.gov

# EXHIBIT 7

**ELECTRONICALLY FILED**
**TOWN CLERKS OFFICE**
**MARCH 29, 2024 @ 3:34 P.M.**

**Ethics Complaint Form**

Name: Bethany Culp _____ Date: March 29, 2024 _____

Address: _____ Telephone Number: _____

Email: _____

Subject of the Complaint (Town Council Member):

Allen Skillicorn _____
_____
_____

Nature of the alleged violation (identifying the specific provision of the code of ethics they allegedly violated):

See attachment to email sent to the Town Clerk, Linda Mendenhall referencing this complaint. ____
_____
_____
_____
_____
_____

Statement of Facts:

See the attachment to the email sent to the Town Clerk, Linda Mendenhall referencing this Complaint
_____
_____
_____
_____
_____

Witnesses and Contact Information (if any):

_____
_____
_____
_____

■ In checking this box, I acknowledge that my statements are true and correct.

■ In checking this box, I acknowledge if the complaint is deemed without merit or frivolous, I agree to pay the legal expenses associated with the claim.

■ In checking this box, I acknowledge that if my complaint is found to have been filed in bad faith or for the purpose of harassment, or that intentionally false or malicious information has been provided under penalty of perjury, the town attorney may refer the matter to the appropriate law enforcement authority for possible prosecution.

Signature: Bethany Culp _____

Beth Culp
▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Fountain Hills, AZ 85268

Subject: Ethics Violations Committed by Councilmember Allen Skillicorn

Councilmember Allen Skillicorn has in the past 30 days through correspondence to his constituents and videos posted on social media attacked the Mayor and Councilmember Kalivianakis. Demeaned, disparaged and defamed town officials and employees and repeatedly engaged in conduct unbefitting a public official.

### Applicable Provisions of the Code of Ethics

The Code of Ethics is found in Section 8 of the Fountain Hills Rules of Procedure.

The preamble to the Code states in part: "The citizens of Fountain Hills are entitled to have a fair, ethical, and accountable government, which has earned the public's full confidence…."

Section 8.4 of the Code of Ethics obligates every councilmember to: "be dedicated to the highest ideals of honor, ethics and integrity in all public and personal relationships." Under the subsection to Section 8.4 captioned "Public Confidence" Skillicorn and other Councilmembers are obligated to:

> Engage in constructive conversations and debates that encourage the exchange of ideas while avoiding personal attacks or derogatory language.
>
> Refrain from making verbal attacks upon the character or motives of other members of the Council, Boards, Commissions, the staff, or the public.
>
> Refrain from making disparaging remarks about the other members of the Council, Boards, Commissions the staff, or the public.

Section 8.6 of the Code incorporates the following relevant provisions:

> B. Respectability.  We shall safeguard public confidence in the integrity of Town government by being honest, fair, caring, and respectful and by avoiding conduct creating the unexplainable appearance of impropriety, or impropriety or which is otherwise unbefitting a public official.

During the past 30 days Skillicorn has repeatedly violated these provisions of the Code. He has, through correspondence and videos posted to social media: personally attacked and impugned the integrity of the Mayor and Councilmember Kalivianakis; suggested that the Town is engaged in a conspiracy with the to replace the residents of Fountain Hills with immigrants.

**Skillicorn Attacks the Mayor**

Prior to the March 19, 2024 Hearing to determine the Sanctions, if any, to be levied against Councilmember Skillicorn for the three ethics complaints that had been sustained, the following communication was widely disseminated on social media.

8:42 AM Fri Mar 29          •••          📶 VPN 99% 🔋

**Sent:** Monday, March 4, 2024 at 07:58:07 PM MST

**Subject:** URGENT ACTION RECOMMENDED FROM RWOTH

# URGENT ACTION NEEDED

There is an **urgent need** for action from us as a Club. More political moves are underway by our liberal MAYOR, Ginny Dickey.

We are sharing this letter we received today from our Conservative Town Council member Allen Skillicorn:

*From the desk of Fountain Hills Councilman Allen Skillicorn,*

Conservative and liberty loving friends, my voice is being silenced by a liberal mayor by weaponizing our town's ethics code because I am standing firm for conservatism. I got involved because of the conflict between good and evil. In the end, good will triumph!

The liberal mayor through her supporters have made accusations that are purely politically motivated and designed to silence me. The far-left activists in our community are upset because they do not like the fact that I am a conservative who stands on principle. They don't like the fact I opposed the school referendum that would have hiked taxes on residents. They do not like the fact that I ask questions at board meetings and not a rubber stamp for their woke agenda. They know if my questions had been answered, the current ReferendumGate would have been prevented. They don't like me because I have been effective in defeating them and their radical agenda.

**If I had received a fair hearing, there is no question all of the complaints filed against would have been dismissed with prejudice. ,** I did not receive a fair hearing and the mayor's handpicked legal counsel ruled against me on some of the charges, which means the Town Council will be voting on possible sanctions against me.

Under normal circumstances, these sanctions would be discussed in executive session. My political opponents, though, want to do this in a very public way and so the discussion will take place in open session. To add insult, I have been told that I will not be allowed to speak in my own defense. I will not be allowed to confront my accusers,

**I need your help.** I need you to come to the Fountain Hills Town Council meeting on Tuesday, March 5th and offer support for me. **We need to let the Town Council know that political disagreements do not excuse weaponizing the ethics complaint process.**

Please attend the meeting if you are able. The meeting starts at 5:15 pm and will be held at the Fountain Hills Town Council Chamber, located at 16705 E. Avenue of the Fountains in Fountain Hills.

If you have any questions about some of the specifics related to these bogus charges against me, I will happily answer your questions. My number is 480-458-8064. I hope to see you at the Fountain Hills Town Council meeting on March 5th!

Sincerely,

Allen Skillicorn

480-458-8064



In this communication Skillicorn falsely accused Mayor Dickey of weaponizing the town's "ethic's codes" because he was "standing firm for conservatism". In fact, Mayor Dickey has never filed an ethics complaint against Councilmember Skillicorn and none of the ethics complaints that were the subject of the March hearing were related to his status or views as a "conservative".

In this communication Skillicorn claims that he was not given a fair hearing and falsely asserts that the outside lawyer, who sustained the three ethics complaints, had been handpicked by Mayor Dickey to silence him. Skillicorn knew this statement was false at the time it was made. Skillicorn knew that the referral to the outside counsel was made by the Town Attorney. Skillicorn also knew that any the sanctions that could be levied were unrelated to any effort to silence or punish him because he had been effective in defeating the Mayor's "radical agenda."

The correspondence was a violation of the Code of Ethics. Councilmember Skillicorn attacked the Mayor and impugned the integrity of the process that was followed by the Council.

**Skillicorn attacks the Mayor, Council and Falsely accuses Councilmember Kalivianakis of Unethical Behavior**

On March 20, 2024, one day after unprecedented sanctions were levied against him, Councilmember Skillicorn published a edition of the video series he has titled: "Skillicorn Scoops" on the media platform Rumble.

https:rumble.com/v4kfvaq-march-20-2024.html

Skillicorn promoted the video on his X account.



On Rumble Skillicorn described the video as follows:

> Let's talk about Fountain Hills ReferendumGate, ethics, and secret emails.  I share details about the urban highdensity development, the flash drive scandal in ReferendumGate, and the email coverup by Councilperson Brenda Kalivianakis in this episode.

On X Skillicorn posted:

> Something stinks in Fountain Hills AZ. I'm talking about ReferendumGate, phony ethics sanctions and the coverup of developer emails.

During the video Skillicorn breathlessly leans into the camera brandishing a one-page document which he claims proves that he "was on to something" when he disrupted the January 19th Council Meeting by attempting to interrogate the Mayor and other councilmembers about private communications they had with the developer or money they had received.

The redacted document, that Skillicorn suggests is proof of malfeasance on the part of Councilmember Kalivianakis is found below:



There is nothing improper or unethical about direct communications between a representative of an Applicant, requesting a change in zoning and a Councilperson charged with determining the appropriateness of the requested change. The term "ex parte" communications, bandied about by Councilman Skillicorn during the January 19th hearing , applies to litigated matters and has no application to a one on one communication between an Applicant and a  Public Offical.

As Councilmember Kalivianakis attempted to explain, during a subsequent Town Council meeting, this email exchange was prompted by a request made by her to the Applicant's representative for contracts supporting the Developer's representation that there would be 468 dedicated parking spaces for the residents of the apartment complex and their visitors. Councilmember Kalivianakis wanted to be in a position to respond to the concern, expressed by her constituents, that the developer had not been able to secure the parking described in the application.

Councilmember Skillicorn claims that he has owned and operated several successful businesses. As a sophisticated businessman he must be aware that contracts contain proprietary information. This proprietary information would not be subject to disclosure unless the contracts were deemed to be a public record. Under Arizona's Open Records laws an otherwise private contract could become a public document if it were inadvertently delivered to an official email address. To protect against this eventuality a request was made for a private email address. The explanation: "(W)e don't' want these in the public domain" was understandable considering the proprietary nature of the information contained in the contracts.  It was the contract documents attached to the email that the Applicant wanted to be kept private, not the email.

It is not, as Skillicorn suggests, illegal or unethical for a councilperson or any public official to request documents or information from anyone to educate herself or respond to the concerns of constituents.  Similarly, it was not illegal or unethical for Councilmember Kalivianakis to provide her personal email address to the Applicant's representative to assuage the apparent concern that the proprietary information in the documents could become public.

Skillicorn must have been aware that there was nothing improper about the communication between Councilmember Kalivianakis and Sandor's representative. Yet in the "Something Stinks" video he suggests that his colleague was hiding this "secret email" to cover up illegal or unethical conduct.  As to this inference it is important to note that the video ends with Skillicorn's vow to "clean up" the corruption and "drain the swamp".

Through this video, published on multiple platforms, Skillicorn unjustifiably impugned the reputation of the Town he took an oath to serve and the integrity of town employees and his colleague in violation of the Code of Ethics.

**In a radio interview refers to his colleagues as "Corruptocrats" and invokes a racist trope.**



On March 26, 2024, Councilman Skillicorn skipped an important planning meeting of the Town Council to travel to Tucson to be interviewed by Garret Lewis. The interview begins approximately 55 minutes into the You Tube recording:

https:www.iheart.com/podcast/82-the-afternoon-addiction-wit-28403290/

During the interview Skillicorn, identifying himself as a Fountain Hills Town Councilman, accuses the "Corruptocrats" of Fountain Hills of building lower income higher density housing as part of a plan to replace the existing population. Skillicorn agrees with Lewis that "illegals" could be brought in to live in the low-income housing to fill the Town's "underperforming" schools; provide workers and customers for the Chamber of Commerce: and replace existing voters with those more likely to support "democrats".  In the interview, Skillicorn again refers to the "secret emails" exchanged by councilmembers with developers and suggests that those councilmembers may be motivated to support the project by the prospect of "campaign cash".

Skillicorn repeatedly violated the Code of Ethics in this interview.  He referred to Town Employees as "corruptocrats".  He accused town officials of building high-density, low-income housing to replace existing residents. He invoked the Great Replacement theory, a far right, white-nationalist conspiracy theory premised on the belief that policies allowing for the

immigration of non-whites into western countries is part of a global conspiracy to "wipe out the white race".   In this interview Skillicorn caused grave injury to the Town, its employees and officials.

It is my hope and expectation that the Council will take it upon itself to review the undisputed evidence; confirm that there are no facts requiring investigation by an outside attorney; and promptly address Skillicorn's unethical conduct.

Respectfully submitted,

Beth Culp

# EXHIBIT 8

On May 3, 2024, at 11:21 AM, Tina Vannucci
<Tina@fitzgibbonslaw.com> wrote:


**EXTERNAL EMAIL**

Councilman Skillicorn,

As you may be aware, I've been hired by the Town
of Fountain Hills to investigate a complaint that was
filed alleging you violated the Ethics Code when you
posted on social media "attack[ing] the Mayor and
Councilmember Kalivianakis.  Demeaned,
disparaged and defamed town officials and
employees and repeatedly engaged in conduct
unbefitting a public official."  Can you please provide
me a couple days and times that would work for you
to talk about these allegations next week?

Thank you.



**Tina L. Vannucci**
ATTORNEY
1115 E. Cottonwood Ln., Suite 150
Casa Grande, AZ 85122
**Main** 520-426-3824 • **Direct** 520-381-9982
tina@fitzgibbonslaw.com
www.fitzgibbonslaw.com